UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAMEED KHALID DARWEESH and HAIDER SAMEER ABDULKHALEQ ALSHAWI, <br><br> on behalf of themselves and others similarly situated, <br><br> *Petitioners*, <br><br> v. <br><br> DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and JAMES T. MADDEN, New York Field Director, CBP, <br><br> *Respondents*. | Case No. _____ <br><br><br> Date: January 28, 2017 |

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## INTRODUCTION

Petitioners Hameed Khalid Darweesh, an Iraqi husband and father of three, and Haider Sameer Abdulkhaleq Alshawi,[1] an Iraqi husband and father, landed at John F. Kennedy International Airport ("JFK Airport") on the evening of January 27, 2017. Petitioner Darweesh was granted a Special Immigrant Visa ("SIV") on January 20, 2017 as a result of his service to the United States as an interpreter, engineer and contractor. Petitioner Alshawi was granted a Follow to Join Visa on January 11, 2017 to rejoin his wife and son, who were granted refugee status due to their family's association with the United States military. After conducting standard procedures of administrative processing and security checks, the federal government has deemed both Petitioners not to pose threats to the United States.

Despite these findings and Petitioners' valid entry documents, U.S. Customs and Border Protection ("CBP") blocked both Petitioners from exiting JFK Airport and detained Petitioners therein. No magistrate has determined that there is sufficient justification for the continued detention of either Petitioner. Instead, CBP is holding Petitioners at JFK Airport solely pursuant to an executive order issued on January 27, 2017.

Because the executive order is unlawful as applied to Petitioners, their continued detention based solely on the executive order violates their Fifth Amendment procedural and substantive due process rights, and is ultra vires the immigration statutes. Further, Petitioners' continued unlawful detention is part of a widespread pattern applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, on behalf of themselves and

---

[1] There are multiple English spellings of Mr. Alshawi's name.

all others similarly situated, Petitioners respectfully apply to this Court for a writ of habeas corpus to remedy their unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2. Venue properly lies within the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

3. No petition for habeas corpus has previously been filed in any court to review either of Petitioners' cases.

## PARTIES

4. Hameed Khalid Darweesh, named Petitioner, is a citizen of Iraq and recipient of an Iraqi Special Immigrant Visa (SIV). As an interpreter, electrical engineer and contractor, Mr. Darweesh performed valuable work on behalf of the U.S. government in Iraq from roughly 2003 to 2013. Despite being issued a valid visa on January 20, 2017 to relocate to the United States, Mr. Darweesh is presently detained at JFK Airport. As of the filing of this complaint, the sole basis for Defendants' continued custody of Mr. Darweesh is the January 27, 2017 executive order issued by President Donald J. Trump.

5. Haider Sameer Abdulkhaleq Alshawi, named Petitioner, is a citizen of Iraq and recipient of a Follow to Join (FTJ) Visa. His wife and child are lawful permanent residents residing in Houston, Texas. Despite being issued valid travel documentation on January 11, 2017, to relocate to the United States, Mr. Alshawi is presently detained at JFK Airport. As of the filing of this complaint, the sole basis for Defendants' continued custody of Mr. Alshawi is the January 27, 2017 executive order issued by President Donald J. Trump.

6. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

7. U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

8. Respondent John Kelly is the Secretary of DHS. Secretary Kelly has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

9. Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

10. Respondent James T. Madden is the Director of the New York Field Office of CBP, which has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

11. Respondent Donald Trump is the President of the United States. He is sued in his official capacity.

## STATEMENT OF FACTS

**President Trump's January 27, 2017 Executive Order**

12. On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

13. One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

14. Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

15. Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

16. There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioner Hameed Khalid Darweesh**

17. Hameed Khalid Darweesh is a 53-year-old citizen of Iraq, married with three children (twenty years, fifteen years, and seven years of age).

18. Mr. Darweesh was trained and worked as an electrical engineer in Iraq. Between March 20, 2003 and September 30, 2013, he was contracted by the U.S. government to work in a variety of positions that placed him in substantial risk of being targeted, attacked and killed by anti-American militias and insurgents.

19. Mr. Darweesh's services included: working as an interpreter for the U.S. Army 101st Airborne in Baghdad and Mosul from April 1, 2003 to January 15, 2004; working as an interpreter for the 91st Engineering Unit at the Baghdad Airport from January 20, 2004 to August 4, 2004; working as a Project Engineer for the U.S. Government Projects Contracting Office Oil sector of North Iraq from December 5, 2005 to December 1, 2006; and, working for Vessar contractors of the U.S. government from 2006 to 2011.

20. Mr. Darweesh was directly targeted twice for his association with the U.S. Armed Forces. While working at the Baghdad Airport between 2004 and 2005, the Baghdad Police entered his house, claiming they were searching for a terrorist. The Baghdad Police are widely known to be closely affiliated with anti-American militias. Shortly after this incident, two of Mr.

Darweesh's colleagues were killed as soon as they arrived at work. As a result of these attacks, Mr. Darweesh feared for his safety and decided to leave Baghdad for Kirkuk.

21. In the second instance, in July 2009, Mr. Darweesh was stopped at a market in Kirkuk where he was informed by a local shopkeeper that men were driving around in a BMW asking for him by name and the location of his house. These men returned a second time the following week, and Mr. Darweesh had strong reasons to suspect that the men searching for him were terrorists. As a result, Mr. Darweesh and his family were forced to flee to a different area of Iraq, Erbil.

22. Based on these threats and his over ten years of service to the U.S. government, Mr. Darweesh applied for an Iraqi Special Immigrant Visa (SIV) status on or around October 1, 2014.

23. Congress created the Iraqi and Afghan Special Immigrant Visa (SIV) programs to provide safety and refuge in the United States for Iraqis and Afghans who face or have faced serious threats on account of their faithful and valuable service to the United States. The programs were established pursuant to the Refugee Crisis in Iraq Act of 2007, 8 U.S.C. § 1157 note at 1241-49 and the Afghan Allies Protection Act of 2008, 8 U.S.C. § 1101 note at 601-02.

24. The first step in pursuing a SIV is obtaining Chief of Mission (COM) Approval from the Embassy. The Chief of Mission determines whether the applicant has "provided faithful and valuable service to the United States" and "has experienced or is experiencing a serious threat" as a "consequence" of that service.

25. After obtaining COM Approval, a SIV Applicant files the Form I-360 petition to USCIS to apply for an SIV. Once the petition is approved, the applicant submits a DS-260 visa

application, along with accompanying documents, to the National Visa Center. After the DS-260 is processed, the applicant undergoes an interview at a U.S. consulate or embassy.

26. After the interview, SIV applications go into administrative processing during which the U.S. government conducts various security checks as well as a medical examination. Once an applicant is cleared, they are issued a SIV to travel to the United States.

27. Several weeks after the applicant enters the United States, the applicant receives a green card in the mail and can naturalize five years later.

28. Mr. Darweesh received COM Approval for the visa on January 26, 2015, in a signed statement from Lena Levitt, Refugee Coordinator of the Designee of the Chief of Mission, noting that Mr. Darweesh had provided "faithful and valuable service to the United States Government."

29. Despite receiving COM approval in January 2015, it took over two years for Mr. Darweesh's visa and visas for his family to be processed. After petitioning for a SIV through the U.S. Citizenship and Immigration Services, which was approved conditionally on March 25, 2015, Mr. Darweesh appeared for an in-person interview at the U.S. Embassy in Baghdad on April 12, 2016 and went through administrative processing, including security background checks as well as medical exams.

30. Five Special Immigrant Visas were issued to Mr. Darweesh and his family on January 20, 2017, and they received them by DHL on January 25, 2017. Because of the sensitive and dangerous nature of Mr. Darweesh's situation, the family immediately boarded a flight from Erbil to New York City, via Istanbul, and arrived in the United States on January 27, 2017, around 6:00 PM EST.

31. Mr. Darweesh and his family were expecting to travel on to Charlotte, North Carolina, where they were to receive refugee benefits. However, after de-planing in John F. Kennedy Airport in Queens, New York, Mr. Darweesh was held by U.S. Customs and Border Protection (CBP) and remains in their custody.

32. Mr. Darweeh's attorney was present at the Arrivals section of Terminal 1 but did not enter the CBP area. Mr. Darweesh and his family waited to be processed by CBP for about an hour. Approximately one hour later, Mr. Darweesh himself was moved into "secondary screening." The family waited for over an hour before a CBP officer and Mr. Darweesh emerged to return passports for every member of Mr. Darweesh's family except for Mr. Darweesh himself. Mr. Darweesh was then taken back into secondary screening.

33. At approximately 11:30pm, two CBP officers, upon information and belief, Officer Scott Maurel and Officer Ray Sinacola, requested that the family return to the CBP-controlled security zone for additional questioning of Mr. Darweesh's wife. CBP refused to conduct the questioning of Mrs. Darweesh in the Arrivals area despite requests of counsel. When asked by counsel, the officers confirmed that they were making a request, not giving an order at that time. Through counsel, the family declined the request and left the airport.

34. Mr. Darweesh is not being permitted to meet with his attorneys who are present at JFK and have made multiple attempts to meet with him.

35. When Mr. Darweesh's attorneys approached CBP requesting to speak with Mr. Darweesh, CBP indicated that they were not the ones to talk to about seeing their client. When the attorneys asked "Who is the person to talk to?" the CBP agents responded, "Mr. President. Call Mr. Trump."

36. Upon knowledge and belief, Mr. Darweesh remains in the custody of CBP at JFK Airport.

37. Upon knowledge and belief, Mr. Darweesh is not being permitted to apply for asylum or other forms of protection from removal.

38. Upon knowledge and belief, Mr. Darweesh is at imminent risk of being returned to Iraq against his will, and despite the grave danger he faces there.

**Petitioner Haider Sameer Abdulkhaleq Alshawi**

39. Haider Sameer Abdulkhaleq Alshawi is an Iraqi national born on April 29, 1983 in Baghdad, Iraq. He studied accounting at Baghdad University, graduating in 2006.

40. Mr. Alshawi possesses the requisite documentation to enter the U.S.: an immigrant visa in his passport.

41. Upon information and belief, Mr. Alshawi was deemed admissible for a Follow to Join (FTJ) visa category F2A (joining spouse and child) awarded by the U.S. Department of State on January 11, 2017. *See generally* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a) (spouse or child of refugee "shall be granted refugee status if accompanying or following-to-join the principal alien"). Upon information and belief, the visa was authorized by USCIS and the State Department, documenting its approval of Mr. Alshawi's admissibility to the United States as an FTJ Visa recipient. Upon information and belief, The U.S. Embassy in Stockholm also determined that Mr. Alshawi does not pose a security threat to the United States, and, as a result, is admissible to the United States.

42. The FTJ visa was granted to reunite Mr. Alshawi with his wife, Duniyya Alshawi, and their seven-year-old son in the United States. Mr. Alshawi and his wife have been married since 2008.

43. Ms. Alshawi worked for Falcon Security Group, a U.S. contractor, from 2006 to 2007 as an accountant. Upon information and belief, her brother also worked for Falcon Security Group in Human Resources. Mr. Alshawi heard through neighbors in the family's community in Baghdad that, due to the family's association with the U.S. military, insurgents thought that they were collaborators.

44. In 2010, insurgents attempted to kidnap Ms. Alshawi's brother. A month later, an IED placed on Mr. Alshawi's sister-in-law's car detonated, killing her husband and severely injuring her and her daughter. Fearing for their safety, Mr. Alshawi and his wife moved from Baghdad to Erbil, Iraq.

45. Ms. Alshawi and her son applied for refugee status in January 2011. Upon information and belief, in January of 2014 Ms. Alshawi and her son were approved to travel to Houston through the Priority 2-Direct Access Program (P2-DAP). Upon information and belief, Ms. Alshawi and her son have since adjusted their statuses to that of lawful permanent residents and now live in Houston, Texas. Ms. Alshawi subsequently filed for a FTJ visa for her husband. On October 9, 2014, USCIS approved Ms. Alshawi's I-730 petition for Mr. Alshawi's entry. On January 11, 2017, Mr. Alshawi obtained a U.S. Visa Foil Type ZZ (Visa 93) with a notation in his passport that the foil was prepared at DHS request.

46. Mr. Alshawi's FTJ visa grants him permission to enter the United States. Upon information and belief, pursuant to this visa Mr. Alshawi traveled from Stockholm, Sweden on January 27, 2017 (local time) to immigrate to the United States.

47. Additionally, Ms. Alshawi filed an I-130 application with USCIS to petition for Mr. Alshawi to enter as an alien relative. Mr. Alshawi has a priority date of December 18, 2015. Currently, the visa bulletin for February indicates that visas are being processed with final action dates up to April 15, 2015. Mr. Alshawi thus soon will be eligible for visa processing on this I-130 application in addition to his existing FTJ Visa.

48. Upon information and belief, Mr. Alshawi arrived in at John F. Kennedy airport in New York City on January 27, 2017 at approximately 8:22 PM EST on Norwegian Air flight DY 7005.

49. Upon arrival at the gate, Mr. Alshawi was blocked on the aircraft by CBP. A Norwegian Airline attendant confirmed that he was being held by CBP.

50. Mr. Alshawi is not being permitted to meet with his attorneys who are present at JFK and have made multiple attempts to meet with him.

51. When Mr. Alshawi's attorneys approached CBP requesting to speak with Mr. Alshawi, CBP indicated that they were not the ones to talk to about seeing their client. When the attorneys asked "Who is the person to talk to?" the CBP agents responded, "Mr. President. Call Mr. Trump."

52. Upon information and belief, Mr. Alshawi remains in the custody of CBP at JFK Airport.

53. Upon information and belief, Mr. Alshawi is not being permitted to apply for asylum or other forms of protection from removal.

54. Upon information and belief, Mr. Alshawi is at imminent risk of being returned to Iraq against his will, despite the grave danger he faces there.

**REPRESENTATIVE HABEAS ACTION ALLEGATIONS**

55. In addition to Petitioners Darweesh and Alshawi, there are numerous other individuals detained nationwide who are either refugees admitted via USRAP or visa holders from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen. Each of these similarly situated individuals has been detained and questioned by CBP officials, denied entry to the United States, and subject to the threat of return to the country from which their travel originated, regardless of their presentation of valid entry documents, their status in the prior country, and possible claims qualifying them for protection under 8 USC 1101(a)(42) and 8 U.S.C. § 1225(b)(1)(A)(ii).

56. Each of these similarly situated individuals is entitled to bring a petition for a writ of habeas corpus or, in the alternative a complaint for declaratory and injunctive relief, to prohibit the policy, pattern, and practice of Respondents detaining class members and prohibiting class members from entering the United States when they arrive at U.S. borders with valid entry documents. As set out in further detail in the concurrently filed Motion for Class Certification, these similarly situated individuals satisfy the numerosity, typicality, commonality, and

adequacy of representation requirements established by *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125-26 (2d Cir. 1974) and Fed. R. Civ. P. 23, and respectfully move this Court for an order certifying a representative class of Petitioners consisting of all individuals with refugee applications approved by U.S. Citizenship and Immigration Services as part of the U.S. Refugee Admissions Program, holders of valid immigrant and non-immigrant visas, and other individuals from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen legally authorized to enter the United States, but who have been or will be denied entry to the United States on the basis of the January 27, 2017 Executive Order.

## CAUSES OF ACTION

### COUNT ONE
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### DENIAL OF RIGHT TO APPLY FOR ASYLUM

57. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment.

59. The United States government is obligated by United States and international law to hear the asylum claims of noncitizens presenting themselves at United States borders and ports of entry. The Immigration and Nationality Act provides that "[a]ny alien who is physically present in the United States or who arrives in the United States. . . irrespective of such alien's status, may

apply for asylum in accordance with this section or, where applicable, section 235(b)." 8 U.S.C. § 1158(a)(1); *see also id.* § 1225(b)(1)(A)(ii).

60. Consistent with these United States statutory and international law obligations, individuals arriving at United States ports of entry must afforded an opportunity to apply for asylum or other forms of humanitarian protection and be promptly received and processed by United States authorities.

61. Having presented themselves at a United States port of entry, Petitioners are entitled to apply for asylum and to be received and processed by United States authorities.

62. Respondents' actions in denying Petitioners the opportunity to apply for asylum, taken pursuant to the EO, violate the procedural due process rights guaranteed by the Fourteenth Amendment.

**COUNT TWO**
**FIFTH AMENDMENT – PROCEDURAL DUE PROCESS**
**DENIAL OF RIGHT TO WITHHOLDING/CAT PROTECTION**

63. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64. Under United States law as well as human rights conventions, the United States may not return ("*refoul*") a noncitizen to a country where she may face torture or persecution. *See* 8 U.S.C. § 1231(b); United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and RestrucTturing Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

15

65. Respondents' actions in seeking to return Petitioners to Iraq, taken pursuant to the EO, deprive Petitioners of their rights under 8 U.S.C. § 1231(b) and the Convention Against Torture without due process of law.

### COUNT THREE
### THE IMMIGRATION AND NATIONALITY ACT, THE CONVENTION AGAINST TORTURE, THE FOREIGN AFFAIRS REFORM AND RESTRUCTURING ACT OF 1998, IMPLEMENTING REGULATIONS

66. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67. The Immigration and Nationality Act and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioners to an opportunity to apply for asylum, withholding of removal, and CAT relief. These provisions also entitle Petitioners to a grant of withholding of removal and CAT relief upon a showing that they meet the applicable legal standards. Respondents' actions in seeking to return Petitioners to Iraq, taken pursuant to the EO, deprive Petitioners of their statutory and regulatory rights.

### COUNT FOUR
### FIFTH AMENDMENT – EQUAL PROTECTION

68.     Petitioners repeat and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.     The EO discriminates against Petitioners on the basis of their country of origin, and without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

70.     Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment.

## COUNT FIVE
## ADMINISTRATIVE PROCEDURE ACT

71.     Petitioners repeat and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

73.     Respondents' detention and mistreatment of Petitioners and the members of the proposed class pursuant to the January 27 EO, as set forth above, is not authorized by the INA.

74.     Respondents' actions in detaining and mistreating Petitioners and other members of the proposed class as set forth above were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)-(D).

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners and other members of the proposed class pray that this Court grant the following relief:

(1) Issue a Writ of Habeas Corpus requiring Respondents to release Petitioners and other members of the proposed class forthwith;

(2) Issue an injunction ordering Respondents not to detain any individual solely on the basis of the EO;

(3) Enter a judgment declaring that Respondents' detention of Petitioners and other members of the proposed class is and will be unauthorized by statute and contrary to law;

(4) Award Petitioners and other members of the proposed class reasonable costs and attorney's fees; and

(5) Grant any other and further relief that this Court may deem fit and proper.


DATED: January 28, 2017
Brooklyn, New York

                                        Respectfully submitted,

                                        /s/ Michael J. Wishnie
                                        Michael J. Wishnie (MW 1952)
                                        Elora Mukherjee
                                        Amit Jain, Law Student Intern
                                        Natalia Nazarewicz, Law Student Intern
                                        My Khanh Ngo, Law Student Intern
                                        Yusuf Saei, Law Student Intern

Rachel Wilf, Law Student Intern
The Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@yale.edu

Rebecca Heller
Mark Doss
Julie Kornfeld
International Refugee Assistance Project
Urban Justice Center
40 Rector St., 9th Floor
New York, NY 10006
Phone: (646) 704-3922

Karen C. Tumlin†
Nicholas Espíritu†
Melissa S. Keaney†
Esther Sung†
National Immigration Law Center
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Phone: (213) 639-3900
Jonathan E. Polonsky

Justin Cox
National Immigration Law Center
1989 College Ave. NE
Atlanta, GA 30317
Phone: (678) 404-9119

Omar C. Jadwat
Lee Gelernt
Cecillia D. Wang
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2600

19

ojadwat@aclu.org
lgelernt@aclu.org
cwang@aclu.org

Jennifer Chang Newell[†]
Cody H. Wofsy[†]
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 343-0770
jnewell@aclu.org
cwofsy@aclu.org

Kilpatrick Townsend & Stockton LLP
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 775-8703
Fax: (212) 775-8819

20