**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

Hameed Khalid Darweesh, on behalf of himself
and all others similarly situated; and,

Haider Sameer Abdulkhaleq Alshawi, on behalf of
himself and all others similarly situated,

    *Petitioners*,

        v.

DONALD TRUMP; U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); U.S.
CUSTOMS AND BORDER PROTECTION
("CBP"); JOHN KELLY, Secretary of DHS;
KEVIN K. MCALEENAN, Acting Commissioner
of CBP; JAMES T. MADDEN, New York Field
Director, CBP,
.

    *Respondents*.

_____

Case No. _____

Date: January 28, 2017

## PETITIONERS' MOTION FOR CLASS CERTIFICATION OR REPRESENTATIVE HABEAS ACTION

1.      Petitioners Hameed Khalid Darweesh and Haider Sameer Abdulkhaleq Alshawi have

valid entry documents for the United States but are presently detained by Respondents at John F.

Kennedy International Airport ("JFK") on the basis of an Executive Order issued by President

Donald Trump on January 27, 2017. Mr. Khalid Darweesh is an Iraqi national with a valid

Special Immigrant Visa to enter the United States, based on his work for U.S. contractors and the

U.S. consulate general in Erbil, Iraq. Mr. Abdulkhaleq Alshawi is also an Iraqi national who

arrived in the United States with an approved application to join his legal permanent resident

wife, who entered as a refugee, and their child. Both petitioners assert a fear of returning to their

countries and, if they are not admitted pursuant to their valid entry documents, seek an opportunity to pursue asylum, withholding, relief under the convention against torture. Each of these Petitioners and other members of the proposed class bring this petition for a writ of habeas corpus or, in the alternative, a complaint for declaratory and injunctive relief, to prohibit the policy, pattern, and practice of Respondents detaining class members and prohibiting class members from entering the United States solely on the basis of the Executive Order when they arrive at U.S. borders with valid entry documents.

2.      On January 27, 2016, President Donald Trump issued an Executive Order entitled "Protecting the Nation from Foreign Terrorist Entry Into the United States," ("Jan. 27 EO") that, inter alia, purports to suspend the U.S. Refugee Admissions Program ("USRAP") (Jan. 27 EO Sec. 5) and categorically deny admission to the United States for certain individuals from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen (EO Sec. 3), which are designated as "countries of concern" pursuant to 8 U.S.C. § 1187(a)(12). *See* Department of Homeland Security, DHS Announces Further Travel Restrictions for the Visa Waiver Program, Feb. 18, 2016, https://www.dhs.gov/news/2016/02/18/dhs-announces-further-travel-restrictions-visa-waiver-program (listing Libya, Somalia, Yemen, Iran, Iraq, Sudan, and Syria as countries of concern)

3.      The Executive Order is the sole basis for the Respondents' custody over Petitioners.

4.      The Executive Order establishes a policy, pattern, practice, and custom of detaining and deporting both refugees admitted via USRAP and visa holders from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen who arrive at U.S. borders, notwithstanding that these individuals have valid entry documents for the United States. The Jan. 27 EO orders the suspension of USRAP for 120 days and the denial of entry to certain individuals from the designated countries for 90 days at a minimum.

5.      Upon arrival in the United States, Petitioners and class members are detained and questioned by Customs and Border Protection ("CBP") officials. Class members are subsequently denied entry to the United States, and forced to return to the country from which their travel originated, regardless of whether they present valid entry documents, their status in the prior country, and possible claims qualifying them for protection under the immigration laws, including 8 U.S.C § 1101(a)(42), 8 U.S.C. § 1158(a)(1), 8 U.S.C. § 1231(b); United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231), and 8 U.S.C. § 1225(b)(1)(A)(ii).

6.      Such relatively short periods of detention are particularly difficult for putative class members to challenge independently. Individuals may be forced to board a flight removing them within mere hours of their arrival in the United States. Denial of entry further reduces each individual's capacity to challenge his or her detention because there is no access to counsel and no access to resources such as translators during the fleeting period of detention before deportation. Given that such detention is likely to be repeated for thousands of individuals, class treatment is especially appropriate in this case.

7.      Petitioners and the proposed class, by and through their attorneys, hereby respectfully move this Court for an order certifying a representative class of Petitioners, pursuant to United States ex rel. Sero v. Preiser, 506 F.2d 1115 (2d Cir. 1974). Petitioners ask this Court to certify a class consisting of all individuals with refugee applications approved by U.S. Citizenship and Immigration Services as part of the U.S. Refugee Admissions Program, holders of valid immigrant and non-immigrant visas, and other individuals from Iraq, Syria, Iran, Sudan, Libya,

Somalia, and Yemen legally authorized to enter the United States, but who have been or will be denied entry to the United States on the basis of the January 27, 2017 Executive Order.

8.      Petitioners intend to supplement this motion promptly with briefing and evidentiary support.

9.      The Second Circuit has recognized that representative habeas actions are appropriate in certain circumstances. United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1125-26 (2d Cir. 1974).  The Sero court allowed the petitioner to represent a class of young adults serving state sentences for misdemeanors who were challenging the length of those sentences. Id. Because Rule 23 of the Federal Rules of Civil Procedure is not directly applicable to a habeas class action, the Second Circuit fashioned procedures appropriate for such an action pursuant to the All Writs Act, 28 U.S.C. § 1651.  See Harris v. Nelson, 394 U.S. 286, 299 (1969) (courts may use "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage" in the habeas context). Accordingly, the Second Circuit allowed the case to proceed as "a multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure." Sero, 506 F.2d at 1125.

10.     The Second Circuit articulated a number of reasons why it found class action treatment appropriate in the habeas context, all of which are present in the instant action as well.

11.     First, the challenge brought by the class was "applicable on behalf of the entire class, uncluttered by subsidiary issues." Sero, 506 F.2d at 1126.

12.     Second, citing the likelihood that many of the class would be illiterate or lack sufficient education, as well as the probability that many would not have the assistance of counsel in filing habeas applications, the Second Circuit found that "more than a few [class members] would otherwise never receive the relief here sought on their behalf." Id.

13.     Third, the Second Circuit found considerations of judicial economy persuasive, as a representative habeas action would avoid "[t]he considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions presenting the identical issue."[1] Id.

14.     Each of these conditions is present in the instant case, which therefore counsels in favor of this Court recognizing representative habeas action status.

15.     First, this case addresses the narrow question of the legality of class members' detention, a question which applies equally to all members of the putative class: all are or will be held in Respondents' custody based solely on the Jan. 27 EO.

16.     Second, class members are immigrants, including legal permanent residents and others with lawful immigration status who have been or will be denied entry to the United States. As a result, there is a high likelihood that class members detained at a port of entry will have an unsophisticated command of English. For the same reason, members of the proposed class will likely have an insufficient understanding of the U.S. judicial system, U.S. immigration laws, or their right to apply for asylum in the United States. Together, these create a high probability that the putative class members will lack the ability to obtain the assistance of counsel in challenging their detention based on the Jan. 27 EO, even if they were able to determine that such detention were susceptible to legal challenge.

17.     Moreover, the very short nature of detention authorized by the Jan. 27 EO makes the likelihood of successfully securing counsel and challenging detention even more remote. As soon as class members are detained, Respondents hold them in secondary screening and seek to immediately deport them from the United States. Even more than in Sero, this strongly suggests

---

[1] In this respect, the Second Circuit also mentioned saving the "expense which would be incurred in appointing counsel for each individual who proceeded on his own." Sero, 506 F.2d at 1126. Counsel is not appointed for individuals held in Respondents custody when they are detained at ports of entry. Because of this, there is no cost to appointing counsel in the first instance, and allowing a representative habeas action does not change that.

that "more than a few would otherwise never receive the relief here sought on their behalf." <u>Sero</u>, 506 F.2d at 1126.

18.    Third, the same justifications motivating the <u>Sero</u> court regarding judicial economy are applicable here: allowing a representative habeas action to proceed would avoid "[t]he considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions presenting the identical issue." <u>Id.</u>

19.    In sum, as in <u>Sero</u>, the "unusual circumstances" of this case warrant its treatment as a representative habeas action. <u>Id.</u> at 1125.

20.    The <u>Sero</u> court held that courts should consider an "analogous procedure" to Fed. R. Civ. P. 23 when certifying a representative habeas action. <u>Id.</u>

21.    Since <u>Sero</u>, the Second Circuit and other circuits have consistently turned to Rule 23 when reviewing the certification of representative habeas actions. <u>See, e.g.,</u> <u>Martin v. Strasburg</u>, 689 F.2d 365, 374 (2d Cir. 1982) <u>rev'd on other grounds sub nom.</u> <u>Schall v. Martin</u>, 467 U.S. 253 (1984); <u>see also</u> <u>Bijeol v. Benson</u>, 513 F.2d 965, 968 (7th Cir. 1975) (reviewing representative habeas certification according to Rule 23); <u>United States ex. rel. Morgan v. Sielaff</u>, 546 F.2d 218, 221 (7th Cir. 1975) (same and affirming <u>Bijeol</u>); <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1121-26 (9th Cir. 2009) (applying Rule 23 requirements to representative habeas action); <u>Ali v. Ashcroft</u> 346 F.3d 873, 890 (9th Cir. 2003) (same), <u>vacated on other grounds by</u> <u>Ali v. Gonzales</u>, 421 F.3d 765 (9th Cir. 2003); <u>Nguyen Da Yen v. Kissinger</u>, 528 F.2d 1194-1202-04 (9th Cir. 1975); <u>Napier v. Gertrude</u>, 542 F.2d 825, 827 n.2 (10th Cir. 1976) (same).

22.    District courts both within and outside the Second Circuit have certified representative habeas actions per the requirements of Rule 23. <u>Bertrand v. Sava</u>, 535 F. Supp. 1020, 1024-25 (S.D.N.Y. 1982) <u>rev'd on other grounds,</u> 684 F.2d 204 (2d Cir. 1982); <u>Solomon v. Zenk</u>, 04-CV-

2214, 2004 WL 2370651 (E.D.N.Y. Oct. 22, 2004) (noting the Second Circuit has "approved

habeas corpus class actions"); Streicher v. Prescott, 103 F.R.D. 559 (D.D.C. 1984) (applying

Rule 23 to representative habeas action); Fernandez-Roque v. Smith, 91 F.R.D. 117 (N.D. Ga.

1981) (same); Kazarov v. Achim, 2003 WL 22956006, at *3 n.8 (N.D. Ill. 2003) (same); Adderly

v. Wainwright, 58 F.R.D. 389, 400 (M.D. Fla. 1972) (same).

23.     The proposed representative class meets the four prerequisites for class certification

enumerated in Fed. R. Civ. P. 23(a).

24.     This Court can certify this representative habeas action consistent with the numerosity

requirement of Rule 23(a)(1). The proposed class is "so numerous that joinder of all members is

impracticable," Fed. R. Civ. P. 23(a)(1), and in some cases near impossible.

25.     The Sero court emphasized that the proposed class members in that case, exceeding 500

in number, "far surpass the requirements of numerousness which have been imposed in more

straight-forward civil actions." 506 F.2d at 1126 (citing Cypress v. Newport News Gen &

Nonsectarian Hosp. Assn., 375 F.2d 648 (4th Cir. 1967) and Citizens Banking Co. v. Monticello

State Bank, 143 F.2d 261 (8th Cir. 1944) for proposition that numerosity requirements were

satisfied by classes containing eighteen and forty members, respectively).

26.     Based on statistics compiled by the Department of State from Fiscal Year 2015, about

25,317 individuals from Iraq, Syria, Sudan, Yemen, Iran, Libya, and Somalia typically enter the

United States on non-immigrant, special immigrant, and refugee visas within a given 90 days.[2]

27.     These numbers far exceed the numerosity requirement for analogous actions under Rule

---

[2] This calculation does not include other immigrant visas for which the U.S. Department of State does not keep
statistics by country. Department of State, *Nonimmigrant Visa Issuances by Visa Class and By Nationality FY 2015*,
https://travel.state.gov/content/visas/en/law-and-policy/statistics/non-immigrant-visas.html; Department of State,
*Table IX: Special Immigrant Visas Issued Fiscal Year 2015*,
https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2015AnnualReport/FY15AnnualReport-
TableIX.pdf; Department of State, *FY15 Refugee Admissions Statistics*, https://2009-
2017.state.gov/j/prm/releases/statistics/251285.htm.

23(a)(1), and demonstrate class certification, rather than individual habeas petitions, are the appropriate mechanism for resolving putative class members' claims.

28.     The Second Circuit also emphasized in <u>Sero</u> that class certification was supported by the fact that many of the class members were "unidentifiable at the time the action was commenced." <u>Id</u>. This same consideration applies with special force in the context of detention at ports of entry, given the difficulty of obtaining any information on individuals held at ports of entry and accessing these individuals at multiple facilities at multiple airports within the often short time span between detention and forced departure from the United States.

29.      This Court can certify this representative habeas action consistent with the commonality and typicality requirements of Rule 23(a)(2) and (a)(3). All members of the proposed class share common questions of law and fact.

30.     The claims of the named Petitioners, Mr. Khalid Darweesh and Mr. Abdulkhaleq Alshawi, are typical of the claims of the class as a whole, as required for traditional class actions by Fed R. Civ. P. 23(a)(2) and (3). As in <u>Sero</u>, Petitioners and the proposed class present "clear and unitary allegation[s]," 506 F.2d at 1127, on behalf of all members of the class, "uncluttered by subsidiary issues" <u>Id</u>. at 1126.

31.     The facts of Mr. Khalid Darweesh's situation are common to all class members: he is currently held at a port of entry despite the fact that the Jan. 27 EO does not provide a lawful basis for his detention.

32.     The facts of Mr. Abdulkhaleq Alshawi's situation are also common to all class members: he is currently held at a port of entry despite the fact that he fact that the Jan. 27 EO does not provide a lawful basis for his detention.

33.      Petitioners and the proposed class share legal claims and request the same relief: release

8

from unlawful detention at port of entry into the United States, pursuant to their lawful entry documents. Mr. Khalid Darweesh and Mr. Abdulkhaleq Alshawi allege "that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented … irrespective of minor variations in the fact patterns underlying individual claims," thus satisfying the typicality requirement.  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).

34.     This Court can certify this representative habeas action consistent with the adequacy requirement of Rule 23(a)(4). Mr. Khalid Darweesh and Mr. Abdulkhaleq Alshawi, through undersigned counsel, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Attorneys and law student interns of the Jerome N. Frank Legal Services Organization, the National Immigration Law Center, the American Civil Liberties Union, the Iraqi Refugee Assistance Project, and Kilpatrick Townsend & Stockton LLP have extensive experience litigating complex federal civil rights cases and habeas corpus actions, particularly those involving the Immigration and Naturalization Act, the rights of noncitizens, and constitutional claims. Counsel will "vigorously prosecute[] the claim on behalf of the other members" of the class. Sero, 561 F.2d 1127.

35.     This Court can certify this representative habeas action consistent with the requirements of Rule 23(b)(1). If proposed class members' habeas petitions were individually adjudicated, there would be a risk of "inconsistent or varying adjudications" with respect to proposed class members' constitutional claims that would subsequently lead to "inconsistent or varying adjudications" for Respondents. Fed. R. Civ. P. 23(b)(1)(A). Inconsistent adjudications could force the Respondents to implement an uneven policy with respect to detention that would vary from one port of entry to another.

36.     In the alternative, this Court can certify this representative habeas action consistent with

the requirements of Rule 23(b)(2).

37.     Respondents have "acted or refused to act on grounds that apply generally to the class" by detaining Petitioner and members of the proposed class at U.S. ports of entry, denying them admission to the United States, and returning them to the countries from which their travels originated. Fed. R. Civ. P. 23(b)(2). Final relief is "appropriate respecting the class as a whole" to ensure that Petitioner and the proposed class, a group of individuals who are detained at ports of entry for a short period of time, are subject to a consistent policy. Id.

38.     Petitioner respectfully seeks leave to supplement this motion promptly with a fuller briefing and evidentiary presentation.


DATED: January 28, 2017
New Haven, Connecticut


Respectfully submitted,

/s/ Michael J. Wishnie
Michael J. Wishnie (MW 1952)
Muneer I. Ahmad[†]
Elora Mukherjee (EM 4011)

Amit Jain, Law Student Intern*
Aaron Korthuis, Law Student Intern*
Natalia Nazarewicz, Law Student Intern*
My Khanh Ngo, Law Student Intern*
Victoria Roeck, Law Student Intern*
Yusuf Saei, Law Student Intern*
Thomas Scott-Railton, Law Student Intern*
The Jerome N. Frank Legal Services
Organization
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@yale.edu

10

Omar C. Jadwat**
Lee Gelernt (LG-8511)
Cecillia D. Wang (CW-8359)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2600
ojadwat@aclu.org
lgelernt@aclu.org
cwang@aclu.org

Jennifer Chang Newell[†]
Cody H. Wofsy[†]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 343-0770
jnewell@aclu.org
cwofsy@aclu.org

Mark Doss
Rebecca Heller
Julie Kornfeld
Stephen Poellot
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
URBAN JUSTICE CENTER
40 Rector St, 9th Floor
New York, NY 10006
Tel. (646)-602-5600
mdoss@refugeerights.org
bheller@refugeerights.org
jkornfeld@refugeerights.org
spoellot@refugeerights.org

Karen C. Tumlin[†]
Nicholas Espíritu[†]
Melissa S. Keaney[†]
Esther Sung[†]
NATIONAL IMMIGRATION
LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Phone: (213) 639-3900
tumlin@nilc.org
espiritu@nilc.org
keaney@nilc.org
sung@nilc.org

Justin B. Cox[†]
NATIONAL IMMIGRATION
LAW CENTER
1989 College Ave. NE
Atlanta, GA 30317
Phone: (678) 404-9119
cox@nilc.org

Jonathan Polonsky
Kilpatrick Townsend & Stockton LLP
1114 Avenue of the Americas
New York, NY  10036-7703
Tel. (212) 775 8703

jpolonsky@kilpatricktownsend.com

**Application for admission forthcoming.
* Motion for law student appearance forthcoming.
† Motion for admission *pro hac vice* forthcoming.
†† For identification purposes only. This motion has been prepared by a clinic operated by Yale Law School, but does not purport to present the school's institutional views, if any.

*Counsel for Petitioners*