UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
HAMEED KHALID DARWEESH, et al.,: 17-cv-00480-AMD
                              :
            Plaintiffs,       :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
                              :
DONALD TRUMP, et al.,         : January 28, 2017
            Defendants        :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR EMERGENCY MOTION
FOR STAY OF REMOVAL
BEFORE THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

**For the Plaintiffs:**      **Lee Gelernt, Esq.**
                             **Omar Jadwat, Esq.**
                             **Davis Hausman, Esq.**
                             American Civil
                             Liberties Union Foundation
                             Immigrants' Rights Project
                             125 Broad Street, 18th Fl
                             New York, NY 10004


**For the Defendants:**      **Robert L. Capers, Esq.**
                             United States Attorney

                        BY:  **Susan Riley, Esq.**
                             **Elliot M. Schachner, Esq.**
                             **Scott Dunn, Esq.**
                             Assistant U.S. Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York  11201

                             **Gisela Westwater, Esq.**
                             U.S. Department of Justice
                             Civil Division
                             Office Of Immigration
                             Litigation - District Court
                             PO Box 868
                             Ben Franklin Station
                             Washington, DOCUMENT 20044

**Transcription Service:**   **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  All rise.

2          THE COURT:  Good evening, everybody.  You can

3   sit down.

4          THE CLERK:  In the matter of Hameed Khalid

5   Darweesh and Haider Sameer Abdulkhaleq Alshawi v. the

6   respondents, President Donald Trump, Department of

7   Homeland Security, Customs and Border Protection,

8   Secretary John Kelly, Commissioner Kevin McAleenan and

9   Director James Madden.

10         Counsels, state your appearance, petitioner

11  first.

12         MR. GELERNT:  Lee Gelernt from the National

13  Office of the ACLU.

14         THE COURT:  Hi.  Who is with you?

15         MR. GELERNT:  This is Omar Jadwat, and Davis

16  Hausman, both --

17         THE COURT:  Okay.

18         MR. GELERNT:  -- from ACLU.

19         THE COURT:  Okay.

20         MS. RILEY:  Good evening, your Honor.

21         Susan Riley from the U.S. Attorney's Office,

22  Eastern District.  Seated with me is Scott Dunn, Chief of

23  our Immigration Practice and Elliot Schachner, who is

24  also an immigration expert.

25         THE COURT:  Okay.

3

Proceedings

1          MS. RILEY:  And also seated is Colleen Piccone
2    (ph.), a representative from Customs and Border
3    Protection.
4          THE COURT:  Okay.  Do we have somebody on the
5    phone?
6          MS. RILEY:  Yes, we do.  We have Gisela
7    Westwater from the District Court Section of the Office
8    of Immigration Litigation.
9          THE COURT:  All right.
10         We're here considering an emergency stay
11   application in a removal case.  I just have a couple of
12   questions about status.  The two-named plaintiffs, what
13   is their status right now?
14         MR. GELERNT:  Your Honor, one of them has been
15   released.  We don't know whether the government is going
16   to take any action against him but he was released this
17   afternoon.
18         We are not sure as of this moment about the
19   second one.  The government may be able to say more about
20   the second one.
21         MS. RILEY:  We are sure, your Honor and he has
22   been released.
23         THE COURT:  So both have been released.  Let me
24   just ask you, are you opposing the application for a
25   stay?

4

Proceedings

1          MS. RILEY:  Well, we believe it's moot, your
2  Honor.  Both of the named plaintiffs have been released
3  and there is no need for the issuance of a stay.
4          THE COURT:  What about all the other people in
5  the class?  Just because, I just want to be clear that I
6  have the class members here.
7          The petitioners are asking for certification of
8  a class that consists of all individuals with refugee
9  applications, approved by U.S. Citizenship and
10 Immigration Services, as part of the U.S. Refugee
11 Admissions Program, holders of valid immigrant and non-
12 immigrant visas, and other individuals from Iraq, Syria,
13 Iran, Sudan, Lybia, Somalia, and Yemen legally authorized
14 to enter the United States but who have been or will be
15 denied entry to the United States on the basis of the
16 January 27th, 2017 executive order.
17         So, I am assuming that there are going to be
18 more people that this executive order has an impact on,
19 is that correct?
20         MS. RILEY:  Yes, your Honor.
21         THE COURT:  All right.  So, while the two-named
22 -- well, my second question is, is there any assurance
23 that there won't be some effort to remove the people that
24 are already here?  Is there any assurance by that on the
25 part of the government?

5

Proceedings

1          MS. RILEY:  Do you mean the two-named

2    plaintiffs?

3          THE COURT:  Yes.

4          MS. RILEY:  I have no information in that

5    regard.

6          THE COURT:  Okay.

7          MS. RILEY:  And part of the government's

8    position, and I'm going to let Ms. Westwater take the

9    lead in arguing this, is that this has unfolded with such

10   speed, both the executive order and the actions taken

11   pursuant to the executive order, that we haven't had an

12   opportunity to address any of the issues, the important

13   legal issues, the status of anyone who may be at the

14   airport.

15         THE COURT:  Well, that's why I really started

16   by asking if you really oppose the stay because if you

17   haven't had a chance to address it -- I mean, if I don't

18   grant the stay, there are while not perhaps not these

19   two-named plaintiffs, there are, it sounds to me, like a

20   host of people who will be affected by this executive

21   order and I think just based on what the petitioners have

22   alleged today, is not something that's just -- that is

23   something that is very real.

24         And I do recognize that you haven't really had

25   a chance to review all of this but that's, I think, why

6

                              Proceedings
1    they're asking for the stay.

2              Now is there something else you wanted to say?

3              MR. GELERNT:  No, your Honor.

4              THE COURT:  Okay.

5              MR. GELERNT:  I just wanted to know if you

6    wanted to hear from me yet.

7              THE COURT:  Not just yet.  I do --

8              MR. GELERNT:  Okay.  That's fine, your Honor.

9              THE COURT:  I do want to hear -- and I'm sorry,

10   who is on the phone?

11             MS. RILEY:  Ms. Westwater.

12             MS. WESTWATER:  Judge, this is --

13             THE COURT:  Ms. Westwater?

14             MS. WESTWATER:  -- Gisela Westwater.

15             THE COURT:  Yes.

16             MS. WESTWATER:  Yes.

17             THE COURT:  Did you have anything you wanted to

18   say just on that subject?

19             MS. WESTWATER:  I believe at this time, your

20   Honor -- I mean, the government's position is that the

21   two-named plaintiffs have been dismissed.  That the

22   government can't make any assurances as to any other

23   individuals who are not named plaintiffs.  They all have

24   very different situations.  We believe that a stay at

25   this time would be inappropriate first because these are

7

Proceedings

1  arriving aliens.

2           THE COURT:  Well, I am going to stop you right

3  there.  So, I think everybody agrees that under Supreme

4  Court precedent that considering the application, I am

5  going to apply the traditional four-factor test.  You

6  agree with me on that, don't you?

7           MS. WESTWATER:  I am sorry, in which four-

8  factor --

9           THE COURT:  The four-factor test that you apply

10  for the traditional four-factor test for a temporary

11  restraining order.  So, I'll just go through them for

12  you; likelihood of success on the merits, and really one

13  of the most significant factors which is irreparable

14  injury to the petitioner, the likelihood of injury to the

15  opposing party, which is you, and where the public

16  interest lies.  And when the government is the opposing

17  party, those two final factors, the likelihood of injury

18  to the opposing party and the public interest merge.

19           So, I'm just -- let's just go right to that

20  irreparable injury to the petitioner.  What is your

21  argument that there won't be irreparable injury to either

22  the petitioner or the members of the putative class?

23           MS. WESTWATER:  Your Honor, we believe that's

24  something that is difficult without having the named

25  plaintiffs in front of us, and what exactly are

8

Proceedings

1   plaintiffs arguing are the various statuses of these

2   individuals?

3           THE COURT:  Well, let me just put it this way.

4   I mean, if they had comes in two days ago, we wouldn't be

5   here, am I right?

6           MS. WESTWATER:  That would seem to be correct,

7   your Honor.

8           THE COURT:  So presumably, and at least by

9   definition of the class that the petitioners are asking

10  to be certified, these are all people that have been

11  through a vetting process and at least these two named

12  petitioners have been through a very extensive -- I think

13  one of them, and I'm sure you'll correct me if I am

14  wrong, first applied in 2014.  And our own government,

15  presumably, approved their entry into this country.

16          And so, that really goes to what is the

17  likelihood of injury to the government but the

18  petitioners have also alleged that not just these named

19  petitioners but members of the class, face real

20  irreparable injury and in some cases, people whose

21  families are already here, people who face threats if

22  they're returned to their country of origin, the named

23  plaintiffs have been -- according to the petition, have

24  been specifically targeted with violence in their own

25  countries.

9

Proceedings

1          So, what I would like you to do, whether it's
2  you or whether it's one of your colleagues at the table,
3  is just explain to me how it is that the members of this
4  class will not suffer irreparable injury if I don't grant
5  the stay.

6          MS. WESTWATER:  Your Honor, the difference as
7  we said -- there's a difference within the different
8  categories.  This is an overly broad request --

9          THE COURT:  But just that straightforward
10  question, how can you argue that they won't suffer
11  irreparable injury?  I mean, sure you could argue about
12  who is an appropriate member of the class but that's not
13  my question.  The identified members that the petitioners
14  have identified are all people that there's no question
15  about them being dangerous or anything like that, at
16  least as far as I understand.  So, I mean, I don't hear
17  you to be arguing that there's some particular risk posed
18  by this class of people.  Am I right about that?

19          MS. WESTWATER:  Your Honor, to the two-named
20  plaintiffs --

21          THE COURT:  One of them worked for the
22  government.  One of them worked for the United States
23  government, I believe, or at least the family members
24  did.

25          MS. WESTWATER:  Yes, your Honor.  However, the

10

Proceedings

1  proposed class is broader and would include --

2          THE COURT:  Yeah, but --

3          MS. WESTWATER:  -- tourists, would include

4  people who are not making a claim, who have -- are coming

5  here on a tourist visa which would have a very different

6  interest and very concerns regarding harm.

7          THE COURT:  Well, let me just ask, are tourist

8  visas included in this, as well, in your class?

9          MR. GELERNT:  Yes, your Honor.

10         THE COURT:  Okay.

11         MR. GELERNT:  There is a broad range but we

12 would say that they've all been vetted and all been given

13 legal permission to come here. So, I think there's no

14 question that they've been vetted.  And just with respect

15 to the different classes, I think your Honor has

16 basically put her finger on it, that that may end up

17 being different arguments on the merits but as to the

18 question that you're getting at, a factual question, are

19 they going to face irreparable harm, absolutely.  I mean,

20 they are facing real harm because they are going back to

21 some of the most dangerous countries.

22         And as to your question about do we know

23 whether anybody could be sent back, I mean the government

24 was very candid saying that --

25         THE COURT:  You don't know.

                                                          11
                            Proceedings

1           MR. GELERNT:  -- they can't give assurances and
2    we also just were told that the government is threatening
3    to put someone back on a plane at 9:20 and we don't even
4    know what's going on around the country.  There are so
5    many people -- and so we are here, what we think is a
6    fairly modest request to the Court, to just keep things
7    in place until both sides can brief it.
8           We don't expect your Honor to figure out the
9    merits now.  I mean, some of the merits issues are eye
10   glazing, to be truthful.  We think we have the better of
11   it but certainly on irreparable harm, I haven't heard the
12   government say why they can't keep the people here.  It's
13   not as if these people weren't vetted.  I mean, they were
14   vetted, given legal permission and they were just caught
15   in transit.  They took off before the executive order was
16   signed.  They landed after.  And so, they were in a
17   horrible position.  They were on U.S. soil and they
18   certainly can't be sent back without, at a minimum, an
19   asylum hearing and a Convention Against Torture -- I mean
20   that is basic law.
21          THE COURT:  Do you have a sense of how many
22   people we're talking about?  that was another question
23   that I had.
24          MR. GELERNT:  Yeah.  You know, your Honor, we
25   believe that it's upwards of a hundred to 200.  The

12

Proceedings

1    government won't give us that information.  They won't
2    tell us who the people are, so it makes it very
3    difficult.
4              And I was just passed a note that the
5    government is literally as we speak, putting someone back
6    on a plane back to Syria.
7              THE COURT:  All right.  Do you have anything
8    else you want to say from the government?
9              MS. WESTWATER:  Yes, your Honor.  It appears
10   the question seems to be what is irreparable harm.  As
11   we've argued, for people coming here on a tourist visa --
12             THE COURT:  But that's one category but this is
13   just an emergency stay and so I am interrupting you
14   because I'm not going to make the decision based on some
15   person that has not identified who might have a tourist
16   visa.
17             Apparently, there is somebody who they're
18   putting on a plane -- what do you think about that --
19   back to Syria?  Irreparable harm?
20             MS. WESTWATER:  Your Honor, the government does
21   not have sufficient information about this person or the
22   circumstances, your Honor, to be able to have a position.
23   And I'm sorry, as your Honor had suggested, we all do
24   require additional time to have more facts.
25             THE COURT:  Well, that's exactly why that I am

13

Proceedings

1  going to grant the stay.  So, the stay is --

2          UNIDENTIFIED SPEAKER:  (Inaudible).

3          THE COURT:  No, no, no, no, not a word.  Not a

4  word.

5          The stay is granted.  I will sign it and I also

6  find, just so the record is clear, that each of these

7  four factors is met.  Irreparable harm has been

8  established.  There's no likelihood of injury to the

9  opposing party, nor is there any problem to the public

10  interest and the likelihood of success on the merits,

11  which we have not discussed, but I have reviewed the

12  submissions and for purposes of this application, there

13  is a likelihood of success on the merits.

14          I will also say that there is a likelihood with

15  respect to the certification of the class, that the class

16  will be certified.

17          So, for all of those reasons, I will sign the

18  order which includes the putative class and I think the

19  only thing that is left to do is to pick a date where you

20  can present your arguments more fully.  Do you have one

21  proposed?

22          MR. GELERNT:  We will proceed on whatever

23  schedule the Court wants us to.

24          THE COURT:  All right.  Well, I think it really

25  is going to depend in part on how much time it's going to

14

Proceedings

1    take.  I think the government hasn't really had a full

2    chance to think about this.  So, what time sounds good to

3    you?

4              MS. WESTWATER:  I would ask --

5              THE COURT:  Do you want --

6              MS. WESTWATER:  -- if anyone in the -- if my

7    colleagues from the United States Attorney's Office would

8    have a potential proposed schedule?

9              THE COURT:  What about Friday morning for an

10   argument, next Friday morning, is that too soon?

11             MS. RILEY:  Yes.

12             THE COURT:  Okay.

13             MS. RILEY:  Yes, it is, your Honor.

14             THE COURT:  Okay.  So, let me just look at my

15   calendar because I may have a few other cases.

16             MS. RILEY:  So, your Honor, we would request an

17   opportunity to submit papers.

18             THE COURT:  Yes.

19             MS. RILEY:  We do not understand the Court to

20   be certifying a class at this time.

21             THE COURT:  I'm not at this time.  It is for

22   purposes of the stay, otherwise I will be signing and

23   listening to application from 100 people and it sounds to

24   me like the class is pretty well defined, as outlined in

25   the petitioner's papers and so, it's what I specified at

15

                         Proceedings

1   the beginning.

2              So, do you have a proposed order?

3              MR. GELERNT:  Um --

4              THE COURT:  It's okay if you don't.  I have one

5   but --

6              MR. GELERNT:  We can get it to you in 15

7   minutes if you need that.

8              THE COURT:  I think I've got it.  I just need

9   to put who the class is.

10             MR. GELERNT:  Your Honor, can I make two

11  points?

12             THE COURT:  Yes.

13             MR. GELERNT:  The first is, we are not pushing

14  any schedule on the Court and want to proceed as the

15  Court feels appropriate.  The only thing that we would

16  ask because I think the government is going to ask for

17  two weeks, it sounds as if the government is going to

18  keep all these hundreds of people who have been given

19  lawful status in detention.  That's a long time.

20             And so, if the government is going to release

21  them on supervision, that would be the best of all

22  worlds.  I think since they were, by our government,

23  given lawful status, if you're not going to release them,

24  then we would ask that you proceed as quickly as

25  possible.

16

Proceedings

1        The only thing I wanted --

2        THE COURT:  Well, let me just ask first of all,

3   are you in a position to say that right now?

4        MS. RILEY:  We are not.  We are not, your

5   Honor, but what we are in a position to do is point out

6   that today, the named plaintiffs were released.

7        THE COURT:  Right.

8        MS. RILEY:  And to the extent that requests are

9   made, we will act on them --

10        THE COURT:  Well, obviously the --

11        MS. RILEY:  -- one way or the other.

12        THE COURT:  -- petitioners do have an interest.

13   If somebody is not being released, I guess I'll just hear

14   from you, if that happens.

15        MR. GELERNT:  And that's how -- I mean, we

16   would ask that the government designate someone that we

17   could send that information to because I think right now,

18   we don't even have a person --

19        THE COURT:  I think that's probably a good

20   idea.  If you all can work out somebody with whom the

21   petitioner' can communicate with specific individuals.

22        MR. GELERNT:  Right.  And, you know, the other

23   problem for us as the government knows is, the government

24   is not letting us see all the people in all the airports.

25   If they want to provide a list on, you know, why they're

17

Proceedings

1  going to release some and not the others, but right now

2  we're sort shooting -- I mean, what's happened is through

3  sort of happenstance, we found people at airports.

4          THE COURT:  What do you want me to do?

5          MR. GELERNT:  If the government would provide a

6  list of all the people and whether they're going to

7  release them or not, I think that would be the best

8  thing.

9          MS. RILEY:  We don't know.  Your Honor, we

10  don't know.

11          THE COURT:  But can you provide at least a list

12  of who is being detained?

13          MS. RILEY:  Well, your Honor, that is actually

14  more difficult than it sounds.  People are coming in all

15  the time.

16          THE COURT:  Well, why don't you try to work it

17  out?  Get him a list of people that are detained.

18          MS. RILEY:  We can try to work it out.

19          THE COURT:  All right?  Sorry.  Go ahead.

20          MR. SCHACHNER:  Just one question just to

21  define the contours of the stay.  So, it's clear the stay

22  is in terms of not removing anyone.

23          THE COURT:  Correct.

24          MR. SCHACHNER:  But is the stay also to prevent

25  any sort of processing of these foreign nationals?  For

Transcriptions Plus II, Inc.

Proceedings

1    example, if the processing would lead to their --

2              THE COURT:  I don't think anybody is asking

3    that.  You're not asking --

4              MR. SCHACHNER:  I want to be clear on the

5    kind --

6              MR. GELERNT:  I mean, if you're talking about

7    you're going to process them and then admit them in their

8    same status, I mean, we obviously wouldn't object to that

9    but that's not what I understand you to be saying.

10             MR. SCHACHNER:  I just want to be clear what

11   the --

12             MR. GELERNT:  I think we want to preserve the

13   status quo.

14             THE COURT:  I think that's the whole point of

15   this hearing is to preserve this status quo and, you

16   know, if this had been two days ago, we would not be

17   here.  So, I don't think it's unduly burdensome to

18   identify the people that we're talking about here within

19   the specific class.  And I don't think it's unduly

20   burdensome to designate somebody with whom the

21   petitioners can communicate.

22             This is not a situation as I understand it,

23   where anybody is asking any information about anybody who

24   has previously been deemed to pose some kind of a threat

25   to national security.  So, that's not the request and

19

Proceedings

1    that's not what I am saying.

2           So, I have an order but I do think it needs to

3    be amended to specify the parameters of the class.

4           MR. GELERNT:  Your Honor, I am sorry, just one

5    last thing.

6           THE COURT:  Going to snatch defeat from the

7    jaws of victory there?

8           MR. GELERNT:  No, I hope not but I am worried

9    about the person and probably other people who are about

10   to get on the plane, whether the government could then

11   tell their offices at the --

12          THE COURT:  Yeah, I'm going to direct you, if

13   there's somebody right now who is in danger of being

14   removed, I am going to direct you to communicate that I

15   have imposed a stay.  Nobody is to be removed in this

16   class, okay?

17          MS. RILEY:  Well, your Honor, one thing I do

18   want to point is that there is nothing preventing anyone

19   who is --

20          THE COURT:  If somebody comes in and does

21   something they're not supposed to do --

22          MS. RILEY:  -- and they want --

23          THE COURT:  -- obviously --

24          MS. RILEY:  No.

25          THE COURT:  I think you know what I am talking

20

Proceedings

1  about.

2          MS. RILEY:  Your Honor, there are people who

3  may request the opportunity to return to their country

4  and --

5          THE COURT:  Well, I am not going to say that

6  you have to trap them here.   So -- right?  I mean, I

7  don't --

8          MS. RILEY:  I --

9          THE COURT:  I'm trying to make this as --

10  frankly, as common sense as possible.  I am not directing

11  you to hold somebody against his or her will that wants

12  to go back to his or her home country.  And I don't

13  understand you to be asking me to do that.

14          MR. GELERNT:  No.

15          THE COURT:  I think you understand the

16  parameters of the order.  One person is nodding, so I am

17  going to go with yes.  And I am going to draft it.  But I

18  just want to make sure there's no misunderstanding.  All

19  right.

20          Anything else that anybody has to say?  All

21  right.  Give us just a little bit of time to draft the

22  order.  It won't take much.

23  (Court and clerk confer)

24          THE COURT:  You know, I do have -- the order is

25  ready.

21

                              Proceedings

1    (Pause)

2              THE COURT:  All right.  So, I have signed an

3    order.  We'll give you copies of the original, as soon as

4    we make them and if there's nothing else, we're done.

5    Okay.  Thank you.

6              MR. GELERNT:  Thank you.

7              MS. RILEY:  Was a date set, your Honor?

8              THE COURT:  Oh, we didn't pick a date, did we?

9              MS. RILEY:  We would ask until February 10th.

10             THE COURT:  February 10th for filing your

11   papers?

12             MS. RILEY:  Yes.

13             THE COURT:  Okay.  And then how much time will

14   you need to respond?

15             MR. GELERNT:  That's a long time from now.

16   We'll respond within 48 hours.

17             THE COURT:  All right.  So, I think February

18   12th is a holiday but --

19             MS. RILEY:  February 20th, I think is a

20   holiday.

21             THE COURT:  All right.  Do you want some time

22   to respond -- to reply, I mean?

23             MS. RILEY:  We would ask for seven days, your

24   Honor.

25             THE COURT:  Okay.  So, where does that take us?

22

Proceedings

1          THE CLERK:  So, that puts the petitioners'

2   response at February 13th and the government's reply at

3   February -- the 20th is President's Day -- the 21st?

4          MS. RILEY:  Yes.  Thank you.

5          THE COURT:  All right.  I think that's it.

6          MR. GELERNT:  Thank you.

7              (Matter concluded)

8                  -o0o-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **30TH** day of **January**, 2017.

*Linda Ferrara*
Linda Ferrara
AAERT CET**D 656
Transcriptions Plus II, Inc.