UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUHA AMIN ABDULLAH ABUSHAMMA,<br><br>     Petitioner,<br><br> -against-<br><br>DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and JAMES T. MADDEN, New York Field Director, CBP,<br><br>     Respondents. | No. 1:17-cv-00488-CBA |

### DECLARATION OF SUHA AMIN ABDULLAH ABUSHAMMA

I, Suha Amin Abdullah Abushamma, declare, pursuant to 28 U.S.C. § 1746 and subject to penalty of perjury, that that following is true and correct:

1. My name is Suha Amin Abdullah Abushamma, and I am a citizen of Sudan. I was born in Saudi Arabia, where my family now resides. Since July of last year, I have been employed by the Cleveland Clinic as a doctor of internal medicine. I am currently in a three-year internal medicine residency program at the Cleveland Clinic. I am a holder of a valid H-1B visa that I received on April 28, 2016 for the purpose of treating patients as a doctor of internal medicine at the Cleveland Clinic. I live in Cleveland, Ohio, where the Cleveland Clinic is located.

2. On the morning of January 28, 2017, I applied for admission to the United States at the John F. Kennedy Airport ("JFK"), in Queens, New York, following a short trip abroad to visit my family in Saudi Arabia. I applied for admission at JFK as a nonimmigrant on the basis of my

valid H-1B visa, with which I am permitted to travel abroad. As explained in more detail below, I was denied entry and instead was sent back to Saudi Arabia.

3. I have been working as a doctor at the Cleveland Clinic for the last six months. I see about ten patients each day and serve as the primary care physician for a number of patients, who depend on me to prescribe and refill their medications, check their labs, and speak with them about their medical conditions and discuss next steps. I also conduct medical research on inflammatory bowel disease, and perform other duties as part of my residency program.

4. I have lived in Cleveland, Ohio since last summer. My fiancé is a legal permanent resident working as a doctor of internal medicine at Detroit Medical Center in Michigan. We are planning to be married in the United States this summer.

5. On January 23, 2017, I flew from Cleveland, Ohio to Jeddah, Saudi Arabia for a short visit with my family. The United States is my home. My apartment with all my things except what I packed for my vacation, my car, my job, and my fiancé all are in the United States. I packed only a few sets of clothes because I did not expect to be away long from my home in Cleveland.

6. On January 28, 2017, I took a flight from Jeddah, Saudi Arabia with a final destination of Cleveland, Ohio, where I live.

7. Upon my arrival at JFK at approximately 11 a.m., I was detained by U.S. Customs and Border Protection ("CBP") agents at JFK. I was not permitted to board my connecting flight to Cleveland. CBP agents confiscated my passport and threatened to take away my phone. I was not told why my passport was being held and I received no information about how long I would be detained.

8. I was detained for at least six hours before I was told by a female CBP agent that I was being refused entry. She spoke to me briefly and told me that I was being detained because of the executive order that the President had signed and because I was a visa holder from Sudan. She gave me no further information about why I was not allowed to return home to Cleveland. I asked to speak to my immigration attorney, David Leopold. She told me no and she then left and never returned.

9. As set forth below, I was never permitted to speak on the phone with my lawyers while in CBP custody despite my initial and subsequent requests to do so. I was able to exchange a few text messages with Mr. Leopold, but when I asked to call him, my requests were refused until after, as set forth below, I agreed to sign certain forms.

10. During these texts, Mr. Leopold advised me that lawyers were working on a petition on my behalf to file with the Court so that I could return home to my job at the Cleveland Clinic.

11. After the female CBP agent who denied my initial request to speak with my lawyer left me, I again waited without being told anything. Ultimately, a new CBP agent came to speak with me. His identification tag read "T. Lam" and he told me I would not be permitted to enter the United States. I again asked to speak to my immigration attorney by phone but Agent Lam refused.

12. During this time, Agent Lam's supervisor was nearby. My attorney, Mr. Leopold, told me by text message that he would speak to CBP agents directly to explain the situation. I asked Agent Lam and his supervisor to speak with Mr. Leopold so that Mr. Leopold could confirm that there were attorneys working on my behalf but both Agent Lam and his supervisor refused to speak with him.

13. Agent Lam told me that the only way I was going to leave detention was if I signed a form to return to Saudi Arabia—the country I had flown in from. He showed me a document and told me that I should sign it. I was not allowed to call my lawyer or ask questions about what was in the document. It was also not feasible to discuss the form in detail with Mr. Leopold through text messages. I was being rushed to sign.

14. I was told by Agent Lam that if I did not sign, I would be forcibly removed and then banned from re-entry for five years. This terrified me because I want to finish my residency at the Cleveland Clinic, and because I was afraid of being removed by force.

15. I again told Agent Lam and his supervisor that there were attorneys who were working on my behalf. I repeatedly begged Agent Lam and his supervisor to give me more time. Agent Lam's supervisor then told me that an order that would allow me to stay in the United States would need to come from the Supreme Court, and that this would not happen. They told me that my lawyers could not do anything to help me in my situation and so I should just sign the form. I now know that what they told me was not true.

16. Agent Lam told me that there was a flight back to Saudi Arabia that was leaving at 8:30 p.m. He said that if I did not sign the form right away, it would mean that I had chosen to be forcibly removed from the United States, and that I would be forced onto the plane anyway, but would then be banned from the United States for five years.

17. I was so scared. Without being allowed to speak to my attorney on the phone despite my repeated requests, and because of all the negative consequences that Agent Lam had told me would occur if I did not sign the form, and feeling like I had no choice, I signed the form.

18. Had I known that what the CBP agents told me was not true, or had I been given more time to consider my options, or been allowed to call my lawyer who could better explain what

4

was happening (which could not be adequately conveyed by text message), I would not have signed the form I was made to sign.

19. At that point, Agent Lam stamped my visa with the words "Cancelled – NYC." Instead of giving me back my passport or a copy of the form that I was made to sign, Agent Lam gave these documents and my boarding pass to a flight attendant on the flight back to Saudi Arabia. I was told I would not be allowed to have any of my documents back until I had landed in Saudi Arabia.

20. I was detained for a total of nearly ten hours at the airport. During this ordeal, I was not given anything to eat and CBP agents refused to allow me to have my passport or to make any phone calls. Only once I signed the form was I offered food. After I signed the form, I asked to call my attorney but I was told by Agent Lam that it would be pointless to use my one phone call to call my lawyer since he would be unable to help me. I was told I should call a family member or friend and tell them I was going back to Saudi Arabia.

21. After my phone call, I was finger printed and then made to sign another form by CBP. The second form was not explained to me and I still do not know what it was that I signed. I was never given a copy of that second form.

22. I was then escorted onto the airplane by two CBP agents. One stood in front of me and the other stood behind. It felt like they were trying to make sure I didn't escape as though I was criminal in custody.

23. The plane pulled away from the gate at JFK at approximately 8:30 p.m. We remained on the ground at JFK for around another 25 minutes. We finally took off shortly before 9 p.m. We landed in Saudi Arabia at approximately 4 p.m. local time (8 a.m. EST), January 29, 2017.

5

24. Later, after I was finally given back my passport and that first form that CBP gave to the flight attendant, I saw that the form, labeled "Notice To Detain, Remove, or Present Alien", states that the reason for my removal is that I was an "Inadmissible Alien". But when I arrived in the United States at JFK I held a valid H-1B visa.

25. The notice also states that I was born in Sudan, which is incorrect. I was born in Saudi Arabia, which is what I told Agent Lam when he asked me where I was born, but when he filled out the notice he put Sudan.

26. I am currently in Saudi Arabia anxiously awaiting an opportunity to return to the United States as soon as possible to resume my life, including to continue my residency and treating my patients at the Cleveland Clinic.

27. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information and belief.

Executed this 31st day of January, 2017, at Yanbu, Saudi Arabia.

Suha Amin Abdullah Abushamma

6