UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

HAMEED KHALID DARWEESH, et al.,         :
                                   :

                 Petitioners,         :      Civil Action No.
                                   :      CV-17-480
      v.                                 :

DONALD TRUMP, President of the United States,    :      (Amon, J.)
et al.,                                     :

                 Respondents.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS THE PETITION, AND
IN OPPOSITION TO PETITIONERS' MOTION FOR A STAY**

## INTRODUCTION

On January 28, 2017, less than a day after the signing of the Executive Order ("the Executive Order" or "Order") revoking the immigrant visas of Iraqi nationals, Petitioners alleged Respondents detained the two named Petitioners in this case, Iraqi nationals named Hameed Khalid Darweesh and Haider Sameer Abdulkhaleq Alshawi, at John F. Kennedy International Airport in New York. Petitioners filed a "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief," challenging their detention on behalf of a putative class.

Petitioners suggest several theories for why the Executive Order was unlawful, but the Court cannot hear those claims for one simple reason: Respondents are not detaining Petitioners, and Petitioners have since been admitted into the United States. The Petition should be dismissed based on lack of jurisdiction: any detention claims have been rendered moot by virtue of Petitioners' admission to the United States. This result holds notwithstanding Petitioners'

class claims because no class had been certified prior to the case becoming moot.

For these reasons, and as explained more fully below, Respondents move the Court to dismiss the Petition for lack of subject-matter jurisdiction. Further, Petitioners cannot state a claim under the Fifth Amendment, the Immigration and Nationality Act, the Convention Against Torture, or the Administrative Procedure Act, so Respondents move the Court to dismiss the Petition for failure to state a claim. Respondents also oppose the issuance of a preliminary injunction or a stay of removal, because the Petition's failure to state a claim means Petitioners have no likelihood of success and any such order, perforce unattached to any live claim, would be overly broad.

## BACKGROUND

### I.     The President's Order

On January 27, 2017, the President issued the Executive Order "to protect the American people from terrorist attacks by foreign nationals admitted to the United States." Exec. Order No. 13769, Protecting the Nation from Foreign Terrorist Entry into the United States, 82 Fed. Reg. 8977 (Jan. 27, 2017) § 2. The Executive Order directs a number of actions in the interests of national security. *Id.* §§ 2–11. Relevant here, the Executive Order suspends entry for ninety days of aliens from seven countries, including Iraq. *Id.* § 3(c).

Those seven countries were previously identified as being associated with a heightened risk of terrorism pursuant to 8 U.S.C. § 1187(a)(12). Congress expressly excluded from eligibility to travel under the visa-waiver program ("VWP") aliens who were dual nationals of a VWP country (e.g., France and Germany) and of Iraq and Syria, or were nationals of any country designated as a state sponsor of international terrorism under other laws, *see id.*

§ 1187(a)(12)(A)(i)(II), (ii)(II) (currently Iran, Sudan, and Syria),[1] *see* 8 U.S.C.

§ 1187(a)(12)(A)(ii)(I)–(II), as well as any individuals who traveled to one or more of those

countries on or after March 1, 2011, *see id.* § 1187(a)(12)(A)(i)(I)–(II).

Congress also authorized the Secretary of Homeland Security, in consultation with the

Secretary of State and the Director of National Intelligence, to designate additional "[c]ountries

or areas of concern" for purposes of the VWP travel restrictions.  *See id.* § 1187(a)(12)(A)(i)(III),

(A)(ii)(III), (D).  In making such a determination, the Secretary must consider "whether the

presence of an alien in the country or area increases the likelihood that the alien is a credible

threat to the national security of the United States"; "whether a foreign terrorist organization has

a significant presence in the country or area"; and "whether the country or area is a safe haven

for terrorists." *Id.* § 1187(a)(12)(D).  In February 2016, the Secretary designated Libya, Somalia,

or Yemen as countries of concern for purposes of the VWP restriction at § 1187(a)(12)(A)(i)

(travel to a designated country on or after March 1, 2011).  *See* Dep't of Homeland Sec., *DHS*

*Announces Further Travel Restrictions for the Visa Waiver Program* (Feb. 18, 2016),

https://www.dhs.gov/news/2016/02/18/dhs-announces-further-travel-restrictions-visa-waiver-

program.

Accordingly, these seven countries designated for purposes of the VWP travel

restrictions—including three also designated for nonimmigrant visa issuance restrictions, *see* 8

U.S.C. § 1735—are the same seven countries covered by § 3 of the Executive Order.  *See* § 3(c)

---

[1] Congress, in 2002, also enacted a provision barring issuance of a nonimmigrant visa to any national of a country designated as a state sponsor of international terrorism "unless the Secretary of State determines, in consultation with the [Secretary of Homeland Security] and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States."  8 U.S.C. § 1735(a).

(incorporating by reference "countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12)").

On February 1, 2017, White House Counsel issued a Memorandum clarifying that suspension of entry pursuant to § 3(c) does *not* apply to lawful permanent residents—that is, an immigrant admitted with the privilege of residing permanently in the United States, 8 U.S.C. § 1101(a)(20)).  Memorandum from Counsel to the President Donald F. McGahn II ("White House Memorandum") (ECF No. 36-1); *see* 8 U.S.C. § 1101(a)(20).

## II.    Timeline of Significant Events and Procedural History

The President issued the Executive Order in the afternoon of January 27, 2017.  That evening, Petitioners, two Iraqis holding immigrant visas, arrived at John F. Kennedy International Airport.  Pet. for Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief ("Pet.") p.1.  One of the two men, according to Petitioners, Hameed Khalid Darweesh, held a Special Immigrant Visa as an Iraqi interpreter to American forces.  *Id.* ¶ 4.  The other, Haider Sameer Abdulkhaleq Alshawi, Petitioners allege, held an F2A "follow to join" immigrant visa.  *Id.* ¶ 5.  According to the Petition, upon arrival at the airport, U.S. Customs and Border Protection inspected Petitioners, denied their admission to the United States per the Executive Order, and held Petitioners in its custody.

The next day, Petitioners filed their Petition and an emergency motion for injunctive relief.  Counsel for Petitioners represented that one of Petitioners had been released by then, but was unsure of the other's status.   Tr. of Emergency Mot. Hr'g at 3 (ECF No. 17). The Court granted a temporary restraining order enjoining Respondents from removing individuals from Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen, who are legally authorized to enter the United States.  (ECF No. 8).

At a status hearing the following week, Counsel for Petitioners represented that both Petitioners had been released and admitted into the country.  Tr. of Feb. 2, 2017, Status Hr'g at 8–9 (ECF No. 56).  By that point at a minimum, Respondents were not detaining any individuals under the Executive Order.  *See also* Decl. of Todd A. Hoffman (Ex. A).

At the status hearing, the Court clarified that the injunctive relief in effect was a temporary restraining order, not a stay of removal.  Tr. of Feb. 2, 2017, Status Hr'g at 18 (ECF No. 56).  The Court extended the temporary restraining order until February 21, 2017, and ordered the parties to brief whether the temporary restraining order should continue as a preliminary injunction.

Respondents now file this opposition to Petitioners' request for a preliminary injunction and motion to dismiss the Petition.

## MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

First, the Court should dismiss the Petition for lack of subject-matter jurisdiction for mootness.  Under Rule 12(b)(1), a court must dismiss a case over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A challenge to subject-matter jurisdiction must be the first one the court considers.  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101–02 (1998).

A federal court lacks jurisdiction over moot cases.  *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 51 (2d Cir. 2004).  A case is moot unless the litigant continues to have a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).  If the litigant loses such a stake, the court must dismiss the petition rather than issue an advisory opinion on an abstract proposition of law.  *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998).  Further, a court has jurisdiction over a habeas petition only if the petitioners are "in custody."  28 U.S.C. § 2241(c);

*see also Baptiste v. INS*, No. 06-cv-0615 (NG), 2006 WL 3050884, at *2 (E.D.N.Y. Oct. 23, 2006).

Each of the Petition's five claims addresses detention and charges Respondents with violating:  Petitioners' procedural due process rights by inhibiting them from applying for asylum (Count One); Petitioners' procedural due process rights by inhibiting them from applying for withholding of removal and Convention Against Torture ("CAT") relief (Count Two); the Immigration and Nationality Act and CAT (Count Three); Petitioners' rights under the Equal Protection Clause (Count Four); and the Administrative Procedure Act (Count Five).  For these alleged wrongs, the Petition seeks both "a writ of habeas corpus to remedy their unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring."  Pet. p.3; *accord id.* Prayer for Relief.

The relief sought by Petitioners is no longer meaningful:  Petitioners are not being detained, and themselves agree that they have in fact been admitted to the United States.  Tr. of Feb. 2, 2017, Status Hr'g at 8–9 (ECF No. 56).  They therefore lack a personal stake in the outcome of this case, and a favorable judicial ruling would not affect any of Petitioners' legal rights or redress any injury.  Similarly, the habeas portions of their lawsuit must be dismissed because Petitioners are not in custody.  Petitioners' case is moot and must be dismissed for lack of subject-matter jurisdiction, and the Court cannot reach the merits of this case to issue an advisory opinion.

Judges sitting in the Eastern District of New York alone have dismissed similar cases involving the Executive Order:

1.) *Morshed v. Trump, et al.*, 17-503 (Amon, J.), voluntary dismissal ("VD") 1/30, dismissed by the court ("D") 1/30

2.)   *Alinejan v. Trump, et al.*, 17-498 (Vitaliano, J.), VD 1/29, D 1/30

3.)   *Fasihianifard v. Trump, et al.*, 17-496 (Amon, J.), VD 1/30, D 1/31

4.)   *Hatahet v. Trump, et al.*, 17-495, (Amon, J.), VD 1/30, D 1/31

5.)   *Emamjomeh v. Trump, et al.*, 17-494 (Amon, J.), VD 2/2, D 2/3

6.)   *Ahmed v. Trump, et al.*, 17-493 (Amon, J.), VD 1/30, D 1/31

7.)   *Bayani v. Trump et al.*, 17-492, (Amon, J.), VD 1/31, D 1/31

8.)   *Jalager v. Trump, et al.*, 17-490 (Amon, J.), VD 1/30, D, 2/1

9.)   *Rashekhi v. Trump et al.*, 17-489 (Amon, J.), VD 1/30, D, 1/31

10.)  *Alqaissi v. Trump et al.*, 17-487 (Mauskopf, J.), VD 1/30, D 1/30

11.)  *Sabounchi v. Trump et al.*, 17-486 (Cogan, J.) VD 1/30, D 1/30

12.)  *Rasekhi v. Trump, et al.*, 17-485 (Amon, J.), VD 1/31, D 2/1

13.)  *Al Saeedi v. Trump et al.*, 17-484 (Matsumoto, J.), VD 1/29, D 1/30

14.)  *Alknfushe v. Trump, et al.*, 17-483 (Amon, J.), VD 2/6, D 2/8.

The Court should reach the same disposition.

Moreover, although the Petition wants proactive relief "to prevent such harms from recurring," any such recurrences are conclusory and speculative. When a habeas petitioner is no longer in custody, to demonstrate a case or controversy, the petitioner must plead a concrete and continuing injury that is a collateral consequence of the detention. *Spencer*, 523 U.S. at 7; *So v. Reno*, 251 F. Supp. 2d 1112, 1120–21 (E.D.N.Y. 2003). Since Petitioners' release, Petitioners have neither alleged evidence of a concrete, continuing injury, nor have they established one. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (indicating that at each stage, the party invoking federal jurisdiction bears the burden of establishing Article III standing); *Baptiste*, 2006 WL 3050884, at *2 ("[I]t is hard to imagine any possible 'collateral consequences' of petitioner's detention. She has not indicated any such consequences to the court.").

The injury allegedly suffered by Petitioners ended when they were lawfully admitted to the United States. Given their admission to the United States, both Petitioners have a lawful

immigration status authorizing them to live and work in the United States, and neither needs to seek asylum, withholding of removal, or relief under CAT, the subject of some of their claims. Indeed, even if they were subject to removal proceedings now that they have been admitted, the law provides sufficient process for that procedure. *See, e.g.*, 8 U.S.C. § 1229a. Petitioners thus no longer have a personal stake in this case, and the Court should dismiss their Petition.

Petitioners do not fall within the narrow exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." *See Van Wie v. Pataki*, 267 F.3d 109, 113–14 (2d Cir. 2001) (quotation omitted). For that doctrine to save their claims, Petitioners must show a "reasonable expectation that the *same* complaining party will be subjected to the *same* action again." *Id.* at 114 (citation and quotation omitted) (emphasis added); *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (finding case moot because prisoner who had obtained full release from supervision had no interest whatsoever in procedures followed by the parole board as to other prisoners because "there is no demonstrated probability that [he] will again be among that number"). Again, Petitioners have made no such allegations.

In addition, Petitioners' pending motion for class certification does not compel a contrary result. "[I]n general, if the claims of the named plaintiffs become moot *prior* to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (citing *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129–30 (1975) (per curiam)) (emphasis added); *see Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified."). This is because "[t]he unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who

8

has a justiciable claim that may be asserted." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 75–76 (E.D.N.Y. 2008); *cf.* Fed. R. Civ. P. 23(a).

Petitioners' claims mooted, at the absolute latest, by February 2, 2017.  Because no class was certified by that date, the entire action has become moot.  To the extent Petitioners are trying to maintain standing based on other similarly-situated individuals, they have not identified anyone who has suffered the same injuries alleged in the Petition.  Indeed, the Government has provided sufficient information that there is no individual who would fall within such a class. *See, e.g.*, Letters from Steven A. Platt to Muneer I. Ahmad, Pet'rs' Exs. H, I (ECF No. 53-3 at 24, 26); *accord* Decl. of Todd A. Hoffman (Ex. A).  Consequently, the Court must dismiss the Petition as moot.

Therefore, not only are Petitioners' habeas claims moot, so are their claims for declaratory and injunctive relief—claims that are inextricably linked to their alleged former detention.  Now that this relief has been afforded to them, "there is no continuing controversy subject to redress by the Court."  *Silent v. Holder*, No. 12-cv-1981 (CBA), 2013 WL 1386343, at *2 (E.D.N.Y. Apr. 4, 2013).  The Court must dismiss the petition for lack of subject-matter jurisdiction.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Alternatively, the Court should dismiss the Petition under Federal Rule of Civil Procedure 12(b)(6).  Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A court must dismiss a pleading that fails to make that showing.  Fed. R. Civ. P. 12(b)(6).  In assessing a pleading's sufficiency, the court must take all factual allegations as true, but ignore "legal conclusion[s] couched as" facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

### A.  Petitioners Fail to State Procedural Due Process Claims

In Counts One and Two, Petitioners claim a violation of their procedural due process rights.  Specifically, they claim they have a constitutional right to apply for asylum, withholding of removal, and CAT relief.  To make a procedural due process claim in the immigration context, a plaintiff must plead "some cognizable prejudice fairly attributable to the challenged process." *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008).  Petitioners have not shown any prejudice stemming from Respondents' alleged refusal to let them apply for protections from removal.  They have been admitted into the country, and there is no allegation that they face removal.  The only relevant relief they seek is a declaratory judgment that the refusal was "unauthorized by statute and contrary to law."  Pet. p.18 (ECF No. 1).  For lack of prejudice, the Court should dismiss Counts One and Two for failing to state a claim.  *See Garcia-Villeda*, 531 F.3d at 149 ("Our role is 'to provide relief to claimants . . . who have suffered . . . actual harm.'" (ellipses in original)).

In Count Three, Petitioners claim that they have been deprived of their *statutory* rights to apply for relief and protection from removal under the INA and CAT.  As explained above, the Executive Order has not deprived Petitioners of any rights with regard to asylum, withholding of removal, or CAT protection, which remain available to Petitioners, including if they were ever placed in removal proceedings under § 1229a.  *Cf. Landon*, 459 U.S. at 26–27 (holding that lawful permanent residents are entitled to some due process in removal proceedings).  Count III therefore does not state a claim.

## B.  Petitioners Fail to State an Equal Protection Claim

Count Four alleges that the Executive Order violates the equal protection component of the Fifth Amendment's Due Process Clause.  But again, because Petitioners were admitted to the United States, their Due Process Clause rights have not been impaired.

In any event, where an equal protection claim is made to an immigration law, *at most* only rational basis review applies.  *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 83 (1976); *United States v. Lue*, 134 F.3d 79, 86 (2d Cir. 1998).  Rational basis review applies even when the federal government distinguishes among aliens on the basis of nationality.  *Romero v. USINS*, 399 F.3d 109, 112 (2d Cir. 2005).  "[I]mmigration regulation differs fundamentally from [other legal contexts] because classifications on the basis of nationality are frequently unavoidable in immigration matters."  *Rajah v. Mukasey*, 544 F.3d 427, 435 (2d Cir. 2008) ("Given the importance to immigration law of, *inter alia*, national citizenship, passports, treaties, and relations between nations, the use of such classifications is commonplace and almost inevitable.").  For example, the Second Circuit has applied rational basis review to reject a Mexican national's equal protection challenge to the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), which reserves certain immigration benefits for nationals of Cuba, Nicaragua, and other nations.  *Romero*, 399 F.3d at 112 (collecting cases in accord from other courts of appeals).[2]

---

[2] Indeed, the Second Circuit's standard may even be less than standard rational basis review. Given the "special deference" due to the political branches in "the immigration area, the precise outer boundaries of [judicial] review are unclear."  *Rojas-Reyes v. INS*, 235 F.3d 115, 122 (2d Cir. 2000).  Respondents do not concede rational review applies, but the Court need not decide the issue because an injunction is inappropriate under that standard.

Rational basis review does not require courts to identify the actual rationale for the distinction; moreover, a "sufficient reason need not be one actually considered." *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008); *see Rojas-Reyes*, 235 F.3d at 122 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged [law] actually motivated the legislature." (second alteration in original)).  Instead, a law reviewed under this lens "is accorded a strong presumption of validity," and the court must uphold the law "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Jankowski-Burczyk v. INS*, 291 F.3d 172, 178 (2d Cir. 2002); *Rajah*, 544 F.3d at 438 (noting a nationality-based distinction must be upheld if it is "not wholly irrational").  This means that a law cannot be invalidated merely because it is underbroad.  *See Romero*, 399 F.3d at 112 (rejecting an argument that NACARA was unconstitutionally underbroad, noting the law's virtue of creating "extremely identifiable groups" (quoting *Pinho v. INS*, 249 F.3d 183, 190 (3d Cir. 2001)).

If the rational basis standard were to apply here, the Executive Order easily satisfies it. The reasonably conceivable state of facts rationally supporting the Executive Order include:  the immigration apparatus's failures before September 11; the "[n]umerous foreign-born individuals" who have been convicted or implicated in terrorism-related crimes since September 11; and the increasing likelihood "that terrorists will use any means possible to enter the United States" because of "[d]eteriorating conditions in certain countries due to war, strife, disaster, and civil unrest." Order § 1.  Moreover, these seven countries were *already* identified pursuant to 8 U.S.C. § 1187(a)(12)—Iraq, Syria, Iran, and Sudan by designation in or operation of the Visa Waiver Program Improvement and Terrorist Travel Prevention Act of 2015, and Libya, Somalia,

and Yemen through statutorily-authorized designation by the Executive Branch in February 2016.

Plaintiffs may attempt to rely on alleged subjective motivations for enacting the Executive Order, but such allegations are simply irrelevant. *See Rojas-Reyes*, 235 F.3d at 122. Similarly, it is irrelevant how closely tailored the Executive Order is to its rational basis. *See Romero*, 399 F.3d at 112. The Executive Order is supported by several rational reasons stated clearly in the document and so must survive equal protection challenge.

For that reason, and because Petitioners have already been granted the immigration benefits they seek, Count IV fails to state a claim. *See also Louhghalam v. Trump*, No. 17-10154-NMG, 2017 WL 479779 at *3–4 (D. Mass. Feb. 3, 2017) (refusing to issue a preliminary injunction and declining to extend a temporary restraining order against the Executive Order after finding that plaintiffs did not establish a likelihood of success on the merits on their equal protection claim).

### C.  Petitioners Fail to State a Claim under the Administrative Procedure Act

Finally, in Count V Petitioners claim that the Executive Order was executed in violation of the Administrative Procedure Act. Specifically, they claim that Respondents' actions were unlawful because the INA does not authorize "discrimination in issue of visas based on a person's race, nationality, place of birth, or place of residence," and the INA does not authorize "Respondents' detention and mistreatment of Petitioners." Pet. ¶¶ 72–74.

Petitioners fail to state a claim under the APA in either regard. First, 8 U.S.C. § 1152(a)(1)(A) does provide, with certain exceptions, that "no person shall receive any preference or priority or be discriminated against in the issuance of an *immigrant visa* because of the person's race, sex, nationality, place of birth, or place of residence." (emphasis added). But

Petitioners were already issued immigrant visas or refugee status before this case began.  Now that they have been admitted into the United States, there is no further need for them to seek an immigrant visa.  And more to the point, 8 U.S.C. § 1152(a)(1)(B) makes clear that the statute does not "limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications."  Thus, the Executive Order is not covered by the restrictions of subsection (A), because the Executive Order directs a review and revision of procedures for processing of visa applications and adopts procedures for a temporary suspension and then resumption of processing of certain visa applications following that review.  *See, e.g.*, Order §§ 3(a), 5(a).  Even if Petitioners alleged a justiciable claim as to issuance of their visas, as distinct from entry, § 1152(a)(1)(B) provides broad discretion to the Executive to take the actions that the Executive Order directs regarding visas, to the extent § 1152(a)(1)(A) applies at all.  Therefore, they cannot succeed on a claim that Respondents unlawfully withheld an immigrant visa from them.

Second, as for Petitioners' ultra vires detention claim, they cannot assert a claim under the APA because, even assuming their claims are true, they have been released.  "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Agency action" is an APA term of art defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *Id.* § 551(13).  This definition connotes formality: "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  For example, an immigration court's final order of removal is a "final agency action," *Kambolli v. Gonzales*, 449 F.3d 454, 461 (2d Cir. 2006), as is the

revocation of lawful permanent resident status, *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008).  However, any alleged temporary and brief "detention" or "mistreatment" of Petitioners did not determine any of their legal rights, such as their immigration status.  *Cf. United States v. Galloway*, 316 F.3d 624, 629 (6th Cir. 2003) ("[S]econdary inspection is no less a matter of course and no less routine than the primary inspection."); *Tabbaa v. Chertoff*, 509 F.3d 89, 96 (2d Cir. 2007).  There is therefore no final agency action for the Court to review under the APA.

Moreover, Petitioners are not "suffering" a legal wrong, because they have already been released and admitted into the United States.  They are thus no longer "adversely affected or aggrieved by agency action," and so fail to state a claim on Count V.

## PRELIMINARY INJUNCTION

If the Court does not dismiss the Petition, then Respondents respectfully urge the Court to deny Petitioners' request for a preliminary injunction.[3]  A preliminary injunction is "an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008).  A party seeking such relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The moving parties—that is, Petitioners—carry the burden of proving these elements.  *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Because both Congress and Article II of the U.S. Constitution provide for the President to conduct affairs involving matters of national security, *Arar v. Ashcroft*, 585 F.3d 559, 570 (2d

---

[3] Petitioners style their motion as one for a "stay of removal."  (ECF No. 4).  However, a stay of removal is available only from a court of appeals, and only in the context of an alien petitioning for review of a final order of removal.  8 U.S.C. § 1252(b)(3)(B).  Accordingly, and consistent with the Court's comments at the February 2, 2017, status hearing, Respondents treat the motion as one for a preliminary injunction.

Cir. 2009) (en banc), courts have consistently "recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). Thus, injunctive relief that would "deeply intrude[] into the core concerns of the executive branch"— such as foreign affairs and national security—may be awarded only where the plaintiff "make[s] an *extraordinarily strong showing*" as to each element. *Adams v. Vance*, 570 F.2d 950, 954–55 (D.C. Cir. 1978) (emphasis added); *see Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 114 (2d Cir. 2001) ("The establishment of political or economic policies is not for the courts. Such action would be an abuse of judicial power.").

## I.      There Is No Likelihood of Success on the Merits

The first factor a court must consider when deciding whether to issue a preliminary injunction is the moving party's likelihood of success on the merits. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Any inquiry into the merits must first consider threshold issues such as Article III standing and subject-matter jurisdiction, which if not satisfied by the movant, require finding in the government's favor on this factor. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See e.g.*, *Steel Co.*, 523 U.S. at 101–02. For the reasons above, mootness deprives Petitioners of any chance of reaching—much

16

less succeeding on—the merits.  The Court should therefore decline an injunction on this ground.

But even if the Court reaches the merits of this case, as also explained above, the Petition fails to state a single claim.  They therefore cannot show a likelihood of success on any part of their case.

## II.     The Petitioners Have Not Shown Any Irreparable Harm

Petitioners also have not shown any irreparable harm.  Even if the circumstances that gave rise to Petitioners' Complaint were, at the time, an injury sufficient to meet the standard for irreparable harm, that is not the case today.  That is because Petitioners are receiving the relief they seek—the Petitioners are not in any immigration custody, and have been admitted into the country.

Petitioners must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction.  *Winter*, 555 U.S. at 24.  Irreparable harm represents a loss that cannot possibly be remedied at the conclusion of the litigation: "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  A showing of "probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Reuters Ltd. v. United Press Int'l, Inc*., 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations and citations omitted).  "[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction."  *Borey v. Nat'l Union Fire Ins*., 934 F.2d 30, 34 (2d Cir. 1991).  Irreparable harm is "an injury that is not remote or speculative but actual and imminent."  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

Here, Petitioners' claims of injury relate solely, even accepting their allegations, to their temporary and brief detention.  The Prayer for Relief asks the Court to issue a writ of habeas corpus, enjoin Respondents from detaining Petitioners, and declare that Respondents' detention of Petitioners is unlawful.  Again, the current Petitioners are no longer, in any fashion, in the same position they were when they filed the Petition.  Therefore, Petitioners are facing no harm whatsoever, much less irreparable harm.  Any suggestion of harm—which Petitioners have not articulated—would be speculative.  Nor can Petitioners base their request for injunctive relief on the claim that *others* who are not before this Court will suffer irreparable harm in the absence of preliminary injunctive relief.  *See Moore*, 409 F.3d at 511.  Accordingly, there is no need for injunctive relief, as Petitioners' injury will have been fully remedied by the time of the hearing on this issue.

### III.    The Balance of Harms and Public Interest Require Denial of Relief

The final two factors required for preliminary injunctive relief require the Court to balance the harm to the opposing party and the public interest.  *Winter*, 555 U.S. at 24.  Here, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Id.*  Any order that enjoins a governmental entity from enforcing federal laws related to national security constitutes an irreparable injury that weighs heavily against the entry of injunctive relief.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).  In this vein, the Supreme Court has specifically acknowledged that "[f]ew interests can be more compelling than a nation's need to ensure its own security."  *Wayte v. United States*, 470 U.S. 598, 611 (1985).

Petitioners, again, face no harm whatsoever because they have been released and lawfully admitted into the country.  Petitioners cannot and do not make any concrete showing of how

their alleged irreparable harm will outweigh the threatened harm that an injunction would cause, or that it would not adversely affect the public interest.  This failure is fatal to Petitioners' request for the extraordinary remedy of a preliminary injunction.  This prong compels against continuing the injunction.

In sum, the Court should deny Petitioners a preliminary injunction.  *See also Louhghalam*, 2017 WL 479779 at *3–7 (D. Mass. Feb. 3, 2017) (refusing to issue a preliminary injunction and declining to extend a temporary restraining order against the Executive Order after finding, inter alia, that plaintiffs did not establish a likelihood of success on the merits).[4]

## **CONCLUSION**

Petitioners have been admitted to the United States, and are not in Respondents' custody. For the foregoing reasons, Respondents respectfully request that the Court dismiss the Petition— which is premised entirely on detention claims—for lack of subject-matter jurisdiction or for failure to state a claim.  In the alternative, Respondents ask the Court to deny Petitioners' request for a stay of removal or a preliminary injunction.

---

[4] *Cf. Washington v. Trump*, No. C17-0141 JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) (granting a nationwide temporary restraining order with summary opinion), *emergency motion for a stay denied*, No. 17-35105, 2017 WL 526497 (9th Cir. Feb. 9, 2017) (denying a stay of the temporary restraining order where the *Government* bore the burden of demonstrating the necessity of a stay).

Dated: February 10, 2017                          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

SAMUEL P. GO
Senior Litigation Counsel

By:  _s/ Steven A. Platt_____
STEVEN A. PLATT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4074
Fax: (202) 305-7000
steven.a.platt@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of New York by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> _s/ Steven A. Platt_
> STEVEN A. PLATT
> Trial Attorney
> U.S. Department of Justice
> Civil Division
> Office of Immigration Litigation
> District Court Section
>
> *Counsel for Respondents*