UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
HAMEED KHALID DARWEESH, et al., :
:
                Petitioners, :
: Civil Action No.
   v. : CV-17-480
:
DONALD TRUMP, President of the United States, : (Amon, J.)
et al., :
:
                Respondents. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO ENFORCE

### INTRODUCTION

      The Court convened an emergency, late-night hearing during which it entered a temporary restraining order enjoining Respondents from removing individuals under a recent executive order. The Court also ordered Respondents to turn over to Petitioners a list of individuals they are currently detaining under the executive order. Respondents have complied with that order and responded by informing Plaintiffs that they are not currently detaining anyone.

      Nonetheless, Petitioners have filed a "motion to enforce," seeking to prematurely commence discovery by claiming Respondents must create and produce more lists (ECF No. 53). Because Respondents have already complied with the order, there is nothing for the Court to

enforce. Additionally, the Court should decline to issue a new order imposing the obligations urged by Petitioners. Respondents respectfully ask the Court to deny Petitioners' motion.[1]

## BACKGROUND

The President issued an executive order restricting travel to the United States for certain Iraqi nationals on the afternoon of January 27, 2017. Exec. Order No. 13769, Protecting the Nation from Foreign Terrorist Entry into the United States, 82 Fed. Reg. 8977 (Jan. 27, 2017) ("Executive Order"). That evening, Petitioners, two Iraqi nationals holding immigrant visas, arrived at John F. Kennedy International Airport in New York. Pet. for Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief ("Pet.") p.1. One of the two men, according to Petitioners, Hameed Khalid Darweesh, held a Special Immigrant Visa as an Iraqi interpreter to American forces. *Id.* ¶ 4. The other, Haider Sameer Abdulkhaleq Alshawi, Petitioners allege, held an F2A "follow to join" immigrant visa. *Id.* ¶ 5. According to the Petition, upon arrival at the airport, U.S. Customs and Border Protection ("CBP") inspected Petitioners, denied their admission to the United States per the Executive Order, and held Petitioners in its custody.

The next day, Petitioners filed their Petition, a motion for class certification, and an emergency motion for injunctive relief. Counsel for Petitioners represented that one of Petitioners had been released by then, but was unsure of the other's status. Tr. of Emergency Mot. Hr'g at 3:14-17 (ECF No. 17). The Court granted a temporary restraining order enjoining Respondents from removing individuals from Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen, who are legally authorized to enter the United States. (ECF No. 8). Petitioners' counsel then asked the Court for an order directing the Government to "provide a list of all the people

---

[1] Another part of Petitioners' motion asks the Court to order Respondents to return individuals allegedly removed after the temporary restraining order was issued. As ordered by the Court (ECF No. 60), Respondents will address that part of the motion in future briefing.

and whether they're going to release them or not." Tr. of Emergency Mot. Hr'g at 17:5–7. The Court did not grant that request. Rather, it asked Respondents, "[C]an you provide at least a list of who is being detained?" *Id.* at 17:11–12. Respondents' counsel pointed out the difficulty in generating such a list, to which the Court responded, "Well, why don't you try to work it out? Get him a list of people that are detained." *Id.* at 17:16–17. Later that night, the Court issued a text-only docket entry: "As stated on the record at the January 28, 2017 hearing, the respondents are to provide a list of individuals detained, pursuant to the January 27, 2017 Executive Order, to the petitioner's counsel" ("the List Order").

Since the Court issued that order, Respondents have provided Petitioners with statements that they are not currently detaining any individuals under the Order. *See, e.g.*, Decl. of Todd A. Hoffman (ECF No. 66-2); Letters from Steven A. Platt to Muneer I. Ahmad, Pet'rs' Exs. H, I (ECF No. 53-3 at 24, 26). Believing Respondents to be out of compliance with the List Order, Petitioners filed a motion to enforce it (ECF No. 53). The Court ordered Respondents to respond to certain portions of it (ECF No. 60).

## ARGUMENT

The Court has asked Respondents to address Petitioners' request for: (1) a list of all people who were detained or subject to additional processing pursuant to the Executive Order; and (2) a list of all people removed pursuant to the Executive Order since the filing of the motion for class certification, with certain details of their removals. (ECF No. 60 at 3). Respondents address each in turn.

### I. The List Order Requires Respondents to Provide a List of All Individuals Currently Detained by Respondents under the Executive Order

The first issue is a list of individuals in detention. The List Order requires Respondents to provide a single list of all individuals that they are currently detaining on the basis of the

3

Executive Order. Petitioners, however, believe Respondents must provide them with a list of all people ever detained or subject to additional processing under the Executive Order. Mot. to Enforce 5 (ECF No. 53-1). They want the list updated "daily," *id.* at 17, to satisfy their desire to "identify and communicate with" putative class members and to "monitor the government's compliance," *id.* at 9. Because the List Order contains so no requirements, the Court should reject Petitioners' contrary and impractical reading.

### A. "Detention" Does Not Include Ordinary Processing

First, Petitioners believe the List Order's reference to "detention" includes routine processing, including referrals to secondary inspection. But secondary inspection is not detention. CBP processes over a *million* people at U.S. ports every *day*.[2] Every person who arrives in the United States is subject to inspection. *See United States v. Ramsey*, 431 U.S. 606, 619 (1977); *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). In particular, individuals seeking admission to the United States are subject to CBP inspection by law and carry the burden of demonstrating admissibility to the United States. 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f). Per standard procedure, CBP inspections may include "primary" and "secondary" inspections, but the distinction between "primary" and "secondary" is one of nomenclature—"secondary inspection is no less a matter of course and no less routine than the primary inspection." *United States v. Galloway*, 316 F.3d 624, 629 (6th Cir. 2003).

It is not a reasonable interpretation of "detention" to include every encounter that CBP has with every individual, including those applying for admission to the United States, where

---

[2] U.S. Customs & Border Prot., *On a Typical Day in Fiscal Year 2016, CBP . . .*, https://www.cbp.gov/newsroom/stats/typical-day-fy2016 (last visited Feb. 10, 2017) (giving the figure of 1,069,266 passengers and pedestrians, including 326,723 at airports).

individuals are subject to some form of processing. Yet Petitioners provided no reasoned approach which would allow Respondents to determine what Petitioners instead mean by the term "detention." This is particularly true given the broad authority of CBP to conduct inspections at the ports of entry for a variety of reasons unrelated to the Executive Order which Petitioners now challenge. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Instead, coupled with their request to have "daily updated" lists, Petitioners demand Respondents to cull through a million arrivals every day to determine who is subject to the Executive Order, deem each one "detained" simply because of their processing, and provide Petitioners information about the ultimate disposition of that processing. The effort required by Petitioners' reading of the List Order would overwhelm CBP and compromise the privacy interests of a significant percentage of individuals in this country. There is no justification for such an effort since Respondents are complying with the Court's temporary restraining order (and Petitioners offer no evidence to the contrary).

The Court certainly did not mean for Respondents to process that much data for a list every single day. The Court said as much at the emergency motion hearing when it recognized its stay would not "prevent any sort of processing of these foreign nationals." Tr. of Emergency Mot. Hr'g at 17:24–25 (ECF No. 17). The Court more generally noted the difficulty of compiling this list, asking the parties to "work it out." Stay Hr'g Tr. 17:16–17, Jan. 28, 2017 (ECF No. 17) ("Well, why don't you try to work it out?"). Given the numerous and fluid interactions CBP has daily with individuals, the best interpretation of "detention" is a bright line: detention pending removal or detention at an off-site detention facility. *See* 8 U.S.C. §§ 1225(b), 1226.

Petitioners cite the CBP Inspector's Field Manual to define "detention," arguing that the manual is "an official CBP publication" that defines detention as beginning "when the applicant is referred into secondary or waits for processing." Mot. to Enforce 7 (ECF No. 53-1). The Inspector's Field Manual is inapposite here. CBP has not used that manual as a source of information for passenger processing since April 2013 because it is outdated and no longer reflects current practices. Even if it were to be examined, the manual should not be relied upon for the legal definition of "detained" since it was written in colloquial terms for the officers in the field, not as a manual for legal doctrine. As the manual warns at the outset,

> The [Field Manual] should be used in concert with several other references: the Immigration and Nationality Act ("INA" or "Act"), Title 8 of the Code of Federal Regulations (8 CFR), and official CBP directives, among others. The [Field Manual] is not intended to duplicate or replace any of them. Although initiated under the former Immigration and Naturalization Service, this manual is gradually being updated to address CBP's policies and practices.

U.S. Customs & Border Prot., *Inspector's Field Manual* ch. 1 (2007), 2007 WL 7710805. Thus, the manual does not override the List Order's use of "detention."

### B. The List Order Directed Respondents to Provide a Single, Fixed List of Detainees

Second, Petitioners think the list should encompass "all individuals who have been detained at any time." Mot. to Enforce 17 (ECF No. 53-1). However, the List Order was not temporally open-ended. The Court told Respondents, "But can you provide at least a list of who is being detained? . . . . Get him a list of people that are detained." Stay Hr'g Tr. 17:11–12, Jan. 28, 2017 (ECF No. 17). The Court did not tell Respondents to provide a list of people who "were" detained, or who "have been" detained, or "will be" detained, or "will have been" detained. Its focus was on a fixed moment in time. For the same reason, Petitioners' extra-textual belief that the List Order requires detainee lists to be updated "daily" is unfounded. Mot. to Enforce 17 (ECF No. 53-1).

6

The Court intended for Respondents to give Petitioners a snapshot of its Executive Order detentions, which vindicates the Court's stated goal of preserving the status quo. Individuals subject to the Executive Order were not subject to detention or removal based on that Order before the Executive Order's issuance. By providing Petitioners with a list of individuals detained based on the Executive Order at the earliest practical time, Respondents are demonstrating a return to that status quo: no individuals subject to the Executive Order are being detained or removed. And the Court's temporary restraining order enjoins Respondents from *removing* certain individuals—information on past detentions does nothing to inform the Court as to whether Respondents are currently removing Executive Order-affected individuals. Petitioners' proposed reading is unreasonably overbroad and unsupported by the Court's orders.

Again, the Court acknowledged the difficulty of compiling this list by asking the parties to "work it out." Stay Hr'g Tr. 17:16–17, Jan. 28, 2017 (ECF No. 17). This acknowledgement is why the List Order did not give Respondents a deadline to produce the list. It is also why the List Order does not, contrary to Petitioners' repeated assertions, require Respondents to create and produce a "daily updated" list. Mot to Enforce 17 (ECF No. 53-1). Petitioners themselves noted that "the list of individuals held was likely to fluctuate." *Id.* at 6. Given that over a million people arrive at U.S. ports every day, requiring Respondents to provide a one-time snapshot of who they were detaining under the Executive Order is the best interpretation of the List Order.

### C. Voluntary Withdrawals of Admission, Even If Coerced as Alleged, Are Not Detentions

Third, Petitioners argue that "detention," as used in the List Order, includes individuals who signed forms withdrawing their applications for admission, allegedly under coercion.[3] Any individuals who might have withdrawn their applications were not placed in detention, but instead were permitted to depart the United States. *See* 8 U.S.C. § 1225(a)(4). Therefore, they are not properly included on a list of people in "detention" as the List Order uses that term.

### II. The Court Did Not Order Respondents to Produce a List of People Removed under the Executive Order

Second, the Court asks Respondents to respond to Petitioners' request for "a list of all people removed pursuant to the Executive Order since the filing of the motion for class certification, the countries to which they were removed, the flights on which they were removed, and the times at which they were removed." (ECF No. 60 at 3). As explained above, the List Order concerns only people being detained, not people being removed. Nowhere did the Court order Respondents to provide such a list. In fact, Petitioners' counsel asked the Court to issue such an order during the hearing: "If the government would provide a list of all the people and whether they're going to release them or not, I think that would be the best thing." Stay Hr'g Tr. 17:5–8, Jan. 28, 2017 (ECF No. 17). The Court rejected that request, and issued a narrower one: "But can you provide at least a list of who *is being detained*?" *Id.* 17:11–12 (emphasis added). Therefore, there is no basis for this aspect of Petitioners' request.

---

[3] Petitioners also claim Respondents are making a distinction between individuals affected by the Executive Order and those affected by its implementing regulations, seizing on a single mention in a hearing of the word "solely". Mot. to Enforce 8 (ECF No. 53-1). Putting aside that Petitioners themselves have repeatedly used the word "solely" throughout this litigation to refer to their own claims in that context—*see, e.g.*, Pet. at 2, 18 (ECF No. 1); Mot. for Class Certification ¶¶ 1, 15 (ECF No. 4); Emergency Mot. for Stay of Removal at 1 (ECF No. 6)—Respondents do not intend to make this distinction.

8

### III. Respondents Have Complied with the List Order

Those being the terms of the List Order, Respondents have complied with them. Because Respondents are not currently detaining individuals under the Executive Order, the list of detainees is a null set and there are no names to give Petitioners. The Court should deny Petitioners' motion.

### IV. In the Alternative, the Court Should Recognize the Ambiguity in the List Order and Clarify It to Conform to Respondents' Reading

Respondents have advanced, at the very least, a reasonable interpretation of the List Order. In the event the Court disagrees with Respondents' interpretation, Respondents respectfully request the Court to refrain from ordering production in the manner Petitioners seek. This is not a class action right now. Petitioners have no need for any specific names since the Western District of Washington's nationwide temporary restraining order of the Executive Order means these individuals can travel freely. *See Washington v. Trump*, No. 17-35105, 2017 WL 526497 (9th Cir. Feb. 9, 2017). Should their Petition survive the motion to dismiss, Petitioners will have mechanisms for seeking this information in discovery. What the Court should not do is give Petitioners the authority, as they believe they have now, to be "monitor[s]" of "the government's compliance." Mot. to Enforce 9, 10 (ECF No. 53-1).

At the very minimum, if the Court orders Respondents to create a list divulging any individual's identity or disposition, Respondents ask the Court to enter an attorneys'-eyes-only protective order. *See* Fed. R. Civ. P. 26(c)(1). Such information, besides being highly personal, could cause significant harm to the individual if, for example, he or she is a refugee.

### CONCLUSION

Respondents have provided, as ordered, a list of people they were detaining as of at least February 7, 2017, under the January 27, 2017, Executive Order: a list of zero. As explained

9

above, Petitioners' interpretation of the List Order is unreasonable and would do nothing more to preserve the status quo. Petitioners may pursue these issues if the case reaches discovery. The Court should deny the Motion to Enforce (ECF No. 53).

Dated: February 10, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

SAMUEL P. GO
Senior Litigation Counsel

By:  *s/ Steven A. Platt*
STEVEN A. PLATT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4074
Fax: (202) 305-7000
steven.a.platt@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 10, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of New York by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    *s/ Steven A. Platt*
STEVEN A. PLATT
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Counsel for Respondents*