UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------- x
:
HAMEED KHALID DARWEESH, et al., :
:
               Petitioners, :
:   Civil Action No.
    v. :   CV-17-480
:
DONALD TRUMP, President of the United States, :   (Amon, J.)
et al., :
:
               Respondents. :
:
------------------------------------- x

# RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO ENFORCE

## INTRODUCTION

    This is a putative class action filed by two men who claimed they were denied entry into the United States under Executive Order No. 13769, "Protecting the Nation from Foreign Terrorist Entry into the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017). Petitioners were admitted to the United States. The Court temporarily enjoined Respondents from removing individuals under the Executive Order.

    Petitioners have filed a "motion to enforce," asking the Court to order Respondents to "[r]eturn to the United States all individuals who were removed at any time after the filing of [the class certification] motion because of the Executive Order." Mot. to Enforce 17 (ECF No. 53-1). The temporary restraining order prohibits removals of certain individuals from the United States, and Respondents have complied with that Order. Petitioners thus do not seek enforcement of the order but instead now seek different relief affecting individuals who are not named plaintiffs and whose circumstances are not in the record before the Court. Because

Petitioners are effectively requesting a premature judgment on the merits in favor of a class that has yet to be certified, and because there are already processes in place to assist any individual who was refused entry because of the Executive Order, the Court should deny this application.[1]

## **BACKGROUND**

On the afternoon of January 27, 2017, the President issued an executive order temporarily restricting travel to the United States for certain nationals of Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.  That evening, Petitioners, two Iraqi nationals holding immigrant visas, arrived at John F. Kennedy International Airport in New York.  Pet. for Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief ("Pet.") at 1.  According to Petitioners, one of the two men, Hameed Khalid Darweesh, held a Special Immigrant Visa as an Iraqi interpreter to American forces.  *Id.* ¶ 4.  The other, Haider Sameer Abdulkhaleq Alshawi, allegedly held an F2A "follow to join" immigrant visa.  *Id.* ¶ 5.  According to the Petition, upon arrival at the airport, U.S. Customs and Border Protection ("CBP") inspected Petitioners, denied their admission to the United States per the Executive Order, and held Petitioners in its custody.

The next day, Petitioners filed their Petition, a motion for class certification, and an emergency motion for injunctive relief.  The Court held a hearing later that day during which counsel for Petitioners represented that one of Petitioners had been released, but was unsure of the other's status.  Tr. of Emergency Mot. Hr'g at 3:14-17 (ECF No. 17).  The Court granted a temporary restraining order enjoining Respondents from removing individuals from Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen, who are legally authorized to enter the United States.  (ECF No. 8).  However, the Court specifically did not restrain the processing of these

---

[1] Petitioners' motion also asks the Court to order Respondents to produce certain discovery.  As ordered by the Court (ECF No. 60), Respondents have addressed that part of the motion separately (ECF No. 68).

individuals, which would include withdrawals under 8 U.S.C. § 1225(a)(4). Tr. of Emergency Mot. Hr'g at 17–18, 20 (ECF No. 17). The motion for class certification, which was filed that same day at 5:43 am local time, remains pending.

Contrary to Petitioners' assertions, neither Petitioner was denied entry to the United States. Both Petitioners have been admitted to the country. Tr. of Feb. 2, 2017, Status Hr'g at 8–9 (ECF No. 56). The relevant provisions of the Executive Order have been stayed and Respondents are not enforcing those provisions. *See Washington v. Trump*, No. C17-0141 JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017); *see, e.g.*, Decl. of Todd A. Hoffman (ECF No. 66-2). No further relief is appropriate.

## **ARGUMENT**

Petitioners have moved the Court to order Respondents to "[r]eturn to the United States all individuals who were removed at any time after the filing of Petitioners' motion for class certification because of the Executive Order." Mot. to Enforce 17 (ECF No. 53-1). Petitioners include in their definition of "removed" any individuals who voluntarily withdrew their applications for admission. Petitioners also ask the Court to order Respondents to admit these putative class members to the United States. *Id.* at 14.

Petitioners ask the Court to issue these orders under the All Writs Act, by which "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Petitioners also appeal to the Court's inherent authority, which is authority "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). A court must act reasonably under either source of authority. Specifically, the All Writs Act requires a court to target "the rational ends of law." *United States v. Catoggio*, 698

F.3d 64, 67 (2d Cir. 2012). A court's exercise of inherent authority must "be a reasonable response to a specific problem." *Dietz*, 136 S. Ct. at 1891.

As explained below, Petitioners' overreaching request is unreasonable—and thus an inappropriate use of the Court's authority—in three ways. First, the order sought would summarily award Petitioners the final relief sought in the Petition, thereby leapfrogging class certification, discovery, and judgment. Second, the motion asks the Court to give relief prematurely to an uncertified class where the requested relief may be in violation of the original terms of the individual's visa (e.g., the purpose of travel to the United States has concluded) or unwanted (e.g., a putative petitioner may no longer wish to enter the United States). Third, Petitioners fail to recognize the processes already available to members of the putative class. For these reasons, the Court should deny the motion.

## I.  Petitioners are seeking a premature final judgment.

First, Petitioners' request is unreasonable because what they are really seeking is a permanent injunction on the merits, not an order "in aid of [the Court's] jurisdiction[]," 28 U.S.C. § 1651(a), or a "'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Dietz*, 136 S. Ct. at 1892. Petitioners' motion makes that clear: "*In light of Respondents' unlawful actions*, the Court should exercise its inherent and statutory authority to order the return of all those individuals removed pursuant to the [Executive Order] since the filing of the motion for class certification . . . ." Mot. to Enforce 11 (ECF No. 53-1) (emphasis added). By "unlawful actions," Petitioners mean Respondents' alleged actions in enforcement of the Executive Order. *Id.* ("Removals of class members based on the [Executive Order] are unlawful . . . ."). This is in contrast to any alleged violation of the temporary

4

restraining order, since Petitioners seek relief for allegedly coerced withdrawals that took place well before the temporary restraining order was entered.[2]

That basis for the relief requested in Petitioner's motion is exactly the same basis alleged for ultimate relief in Petitioners' lawsuit. Each one of the Petition's counts reflects this. *E.g.*, Pet. ¶¶ 62 (Count One),[3] 65 (Count Two),[4] 67 (Count Three),[5] 74 (Count Five).[6] The Petition's Prayer for Relief reflects this. *Id.* at 18 (asking the Court to "[i]ssue an injunction ordering Respondents not to detain any individual solely on the basis of the [Executive Order]"). It is also the basis for their class certification motion, which is why they ask the Court to grant relief for individuals affected any time after that motion was filed. Petitioners are, therefore, asking in their motion for the Court to grant them ultimate relief, going back, inexplicably, to the filing of their motion for class certification.

Asking the Court to grant ultimate relief is inappropriate because the Court has yet to hear full arguments on the merits. Petitioners' motion is an improper procedural device for the relief sought because even a preliminary injunction is designed only "to preserve the relative

---

[2] Respondents deny these allegations of coercion.

[3] "Respondents' actions in denying Petitioners the opportunity to apply for asylum, *taken pursuant to the [Executive Order]*, violate the procedural due process rights guaranteed by the Fourteenth Amendment." (emphasis added).

[4] "Respondents' actions in seeking to return Petitioners to Iraq, taken pursuant to the [Executive Order], deprive Petitioners of their rights under 8 U.S.C. § 1231(b) and the Convention Against Torture without due process of law."

[5] "Respondents' actions in seeking to return Petitioners to Iraq, taken pursuant to the [Executive Order], deprive Petitioners of their statutory and regulatory rights."

[6] "Respondents' actions in detaining and mistreating Petitioners and other members of the proposed class as set forth above [violated] the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)–(D)."

positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Id.*; *see Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 646 (2d Cir. 1998) ("Because it is likely that one or more of the parties will not present their entire case at an unconsolidated preliminary injunction hearing, it ordinarily is improper to decide a case solely on the basis of that type of hearing." (quoting 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2950 (2d ed. 1995))). Here, Petitioners are not seeking temporary or interim relief; as the Court noted, the motion "seeks injunctive relief broader than ordered by Judge Donnelly." Order at 3 (ECF No. 60). Petitioners' demands for the putative class members' return should therefore properly be resolved within the ordinary course of litigation.

Neither the All Writs Act nor the Court's inherent judicial authority authorize the relief sought by Petitioners. "The All Writs Act is not a grant of plenary power to the federal courts," and "it does not authorize [a court] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994). Similarly, "[b]ecause the exercise of an inherent power in the interest of promoting efficiency may risk undermining other vital interests related to the fair administration of justice, a district court's inherent powers must be exercised with restraint." *Dietz*, 136 S. Ct. at 1893.

For example, Respondents have invoked Federal Rule of Civil Procedure 12(b) to ask the Court to dismiss the Petition and Rule 65(a) to oppose Petitioners' motion for a preliminary injunction. Respondents intend to invoke Rule 23 to oppose class certification at the appropriate time. *See Thorne*, 30 F.3d at 370–71 (reversing a writ joining a state agency to a lawsuit in part

6

because the district court never analyzed the federal rules of civil procedure pertaining to joinder).

There is no need for the Court to bypass the ordinary litigation process by issuing this order. The exigency that prompted an emergency hearing on a Saturday night has passed. Issuing this order now would undermine Respondents' and the Court's interest in the fair administration of justice.

II.     **The Court should decline to prematurely grant relief to an uncertified class.**

Second, the two named Petitioners have already been admitted to the United States. Thus, instead of seeking relief for themselves, Petitioners are asking the Court to grant relief exclusively for a putative, uncertified class consisting entirely of unnamed individuals. "[A] district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (internal quotation marks omitted).

The Court has not undertaken this "rigorous analysis" and certified a class. Therefore, there is no class. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").[7] Nor can the Court certify a class on this motion because, among other reasons, the Court has to make an individualized determination relating to coercion for each putative class member. And even were the Court to undertake this "rigorous analysis" prematurely, there is no basis for class certification at this time

---

[7] Petitioners highlight the Court's comment at the emergency motion hearing that "there is a likelihood with respect to the certification of the class, that the class will be certified." Tr. of Emergency Mot. Hr'g at 13:14-16 (ECF No. 17). This comment should be given no weight at this stage because Respondents have not yet presented their own arguments on class certification, and this one line does not constitute a "rigorous" Rule 23 analysis.

7

because, among reasons, "no class may be certified that contains members lacking Article III standing," *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), a showing that Petitioners have, as of yet, failed to make.

The putative class members are not included in this lawsuit. The Court should decline Petitioners' unreasonable request to give relief to these individuals until there is a certified class and a judgment in their favor.

Petitioners believe that the Court should grant the extraordinary and likely unprecedented relief of requiring Respondents to physically return all putative class members to the United States—without any further inquiry into Petitioner's claims—on the thin reed that Respondents were "on notice of [their] challenge to removal." Mot. to Enforce 11 (ECF No. 53-1). Petitioners provide no authority for the proposition that any time any motion for class certification is filed, the opposing parties must immediately cease the actions that are allegedly wronging putative class members. Such a rule makes no sense, because it would convert motions for class certification into unilateral, party-imposed injunctions, thereby encouraging parties to file frivolous motions for class certifications. Moreover, such a rule would violate fundamental due process considerations embodied in Rule 23 with respect to defendants in class action cases. *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) ("The only way a class-action defendant . . . can assure itself of this binding effect of the judgment is to ascertain that the forum court has jurisdiction over every plaintiff whose claim it seeks to adjudicate, sufficient to support a defense of res judicata in a later suit for damages by class members"). Accordingly, the proper route for parties to remedy harms allegedly inflicted after the filing of a motion for class certification is to achieve class certification and then a favorable judgment.

The putative class members here distinguish this case from the only published case Petitioners cite from the immigration context. *Cf. Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 408 (S.D.N.Y. 2004) (ordering the government to return a single, known individual to the United States whose removal the court had previously stayed). Because each named Petitioner is already in the United States, the Court should deny Petitioners' motion to compel the return of their uncertified class to the United States.

### III. There is already a process for putative class members to follow if they wish to return to the United States and are admissible.

Finally, the order sought by Petitioners is unreasonable because the putative class members already have avenues to travel to the United States. First, due to a nationwide preliminary injunction issued in *Washington v. Trump*, No. C17-0141 JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017), most individuals previously affected by the Executive Order can now return to the United States unimpeded by the Executive Order. The only individuals of whom Respondents are aware who may continue to encounter difficulties returning to the United States are those individuals who were subject to the Executive Order, who were found inadmissible in the early hours of implementation, chose to seek to withdraw rather than go through any immigration proceedings, and whose visas were physically marked by CBP as revoked. And even then, the difficulty in traveling is due to airline carriers' reluctance to board travelers with a visa physically marked as revoked. *See* Second Decl. of Todd A. Hoffman ¶¶ 13, 16 (Ex. A). But CBP, in coordination with the Department of State, has already taken, and continues to take, steps to facilitate return travel to the United States for those individuals. *Id.*

As Petitioners acknowledge, "some of these individuals have since returned to the United States." Mot. to Enforce 11 (ECF No. 53-1). Indeed, CBP has identified 141 individuals who

9

were denied admission as a result of the Executive Order and may have had their visas revoked. Second Hoffman Decl. ¶¶ 7–8 (Ex. A). Thirty-eight of those 141 affected individuals have already returned to, and been admitted to, the United States, many with direct assistance by CBP. *Id.* ¶¶ 9–10. These include, for example, Petitioners' declarant Sara Yarjani (as recognized by Petitioners' counsel), and Suha Amin Abdullah Abushamma. *Abushamma v. Trump*, Case No. 17-cv-488 (CBA) (E.D.N.Y. dismissed Feb. 8, 2017) (voluntarily dismissing the case after the petitioner returned to the United States).

Second, individuals whose visas were physically canceled may be able to secure transportation foils or new visas in order to travel to the United States, as was done by Petitioners' declarant Ramez Snober, his wife, and their two children. Decl. of Bryan M. Giblin (Ex. B); *see* Second Hoffman Decl. ¶ 17 (Ex. A). To facilitate that effort, CBP has shared its list of all 141 individuals denied admission with the Department of State. Second Hoffman Decl. ¶ 17 (Ex. A).

In the alternative, Respondents' counsel, working with CBP, have offered to assist with the return of any other individuals affected by the Executive Order. Counsel for Petitioners have specifically been asked to reach out to all relevant organizations to inform them of this. CBP can help by liaising with the Department of State and air carriers to facilitate the boarding of flights to the United States of affected individuals on a case-by-case basis. *Id.* ¶¶ 11–16. For example, CBP has been able to secure return of at least two individuals through this process. *Id.* ¶ 14–15. Respondents' counsel and CBP remain available to discuss with Petitioners if Petitioners believe Respondents are not complying with any court order. *Id.* ¶ 18.

Third, some individuals might not be eligible to return as they are independently inadmissible to the United States. For example, declarant Yahya Aburomman was not denied

10

entry to the United States on account of the Executive Order. He admits to being a Jordanian citizen and holding a Jordanian passport. Aburomman Decl. ¶¶ 1, 5 (ECF No. 53-10). As Petitioners concede, "Jordan, however, is not on the list of seven countries covered by the [Executive Order]." Mot. to Enforce 13 (ECF No. 53-1). Moreover, it appeared to the inspector that Mr. Aburomman might be inadmissible to the United States as an intending immigration without immigrant documentation. Aburomman Decl. ¶ 14 (ECF No. 53-10). Petitioners thus fail to show any reasonable basis that Mr. Aburomman is admissible to the United States but for the Executive Order. This individualized circumstance also highlights why the Court should decline to grant relief to a class that has not yet been certified.

Fourth, Petitioners provide no evidence that all members of the putative class even *want* to return to the United States. For instance, Petitioners cite a declaration by Rashid Ahmed Gibril Ali, who alleges he is a citizen of Sudan who traveled to the United States but was turned around at the airport by CBP. Ali Decl. (ECF No. 53-9). But Mr. Ali was already planning to leave the United States on February 5, 2017. *Id.* He had planned to visit the United States—and had been issued a visa to enter the United States—for the sole purpose of attending a four-day conference. *Id.* Moreover, Mr. Ali never says he would return to the United States, and given that his conference has concluded, he very plausibly may not want to—and he may not be admissible now on the original visa. At the very least, Mr. Ali's case illustrates why the Court should reject Petitioners' assumption that every individual denied entry into the United States because of the Executive Order necessarily wants to return right at this time.

Given these practical considerations and the processes already available to the uncertified class, Respondents believe that Petitioners' request for a court order is unreasonable here.

11

## **CONCLUSION**

Petitioners ask the Court to order Petitioners to "return" individuals affected the Executive Order to the United States. This request is unreasonably premature, and ignores the processes Petitioners' uncertified class can use at the present to return to the United States. The Court should deny this part of the Motion to Enforce (ECF No. 53).

Dated: February 16, 2017                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

SAMUEL P. GO
Senior Litigation Counsel

By: *s/ Steven A. Platt*
STEVEN A. PLATT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4074
Fax: (202) 305-7000
steven.a.platt@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 16, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of New York by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                *s/ Steven A. Platt*
                STEVEN A. PLATT
                Trial Attorney
                U.S. Department of Justice
                Civil Division
                Office of Immigration Litigation
                District Court Section

                *Counsel for Respondents*